[No. 13131. Department Two. — February 3, 1890.]

## LILLIAN CULLEN ET AL., APPELLANTS, *v.* J. C. SPRIGG ET AL., RESPONDENTS.

DEED OF PUEBLO LANDS — CERTAINTY OF DESCRIPTION — GRANT OF A QUANTITY NOT LOCATED — TENANCY IN COMMON. — A deed of pueblo lands, describing the land granted as being a lot of land containing a specified number of acres lying in a specified block, according to the official map of the city, and not attempting to describe any specific part of the block, is not void for uncertainty of description, but operates as a grant of an undivided interest, and creates a tenancy in common in the whole block, in proportion to the number of acres therein contained.

ID. — USE OF THE TERM "LOT" — INTENT AS TO FUTURE SURVEY. — The reference to the land granted as "being a lot," without any description of metes and bounds, does not alter the nature of the grant as essentially one of quantity undivided, it appearing to be the manifest intent of the parties, in view of the resolutions of the city authorities regulating surveys of lots granted, and of the circumstances under which the grant was made, that the lot should be definitely fixed by a future location and survey, at the expense of the grantee.

CONSTRUCTION OF DEEDS — MAXIM — PRESUMPTION — PUBLIC GRANTS. — The maxim, *Ut res magis valeat quam pereat*, must be applied to the con-

struction of all deeds and contracts. It must, in all cases, be presumed that a grantor intended to make a valid grant of some property, unless the contrary appears, whether the grant be public or private. The rule that public grants to private persons are to be construed most strongly in favor of the grantor presupposes the existence of an effective grant, and relates only to the extent of its operation.

FORFEITURE OF PUEBLO LAND GRANTED — DECLARATION OF FORFEITURE — PREMATURE SUBSEQUENT GRANT. — If pueblo land granted is to be forfeited upon failure to make certain required improvements within one year, a subsequent grant by the city to another grantee before the expiration of the year cannot operate as a declaration of forfeiture.

ID. — GRANT IN PRÆSENTI — CONDITION SUBSEQUENT — BURDEN OF PROOF — EFFECT OF BREACH — REVERTER OF TITLE. — If the original grant of such land is *in præsenti,* any condition annexed to it requiring improvements within a certain time can only operate as a condition subsequent, a breach of which must be affirmatively shown by the city or its successors in interest, and does not, *ipso facto,* effect a reverter of title until proper steps are taken to consummate the forfeiture.

ID. — CONSTRUCTION AGAINST FORFEITURE — FORFEITURE OF EXECUTORY CONTRACTS — UNCONDITIONAL GRANT IN FEE-SIMPLE. — Contracts and laws declaring a forfeiture must be strictly construed, and a forfeiture can never take place by implication, but must be effected by express, unambiguous language. If resolutions of city authorities provide only for the forfeiture of executory contracts or certificates of purchase, and do not contemplate the execution of a deed until certain required improvements are made, the mere recital of a sale upon such conditions, and of an agreement of the grantee to perform them, in a deed executed on the day of sale, and purporting to grant the land, to be held by the grantee in fee-simple absolute, without any condition, precedent or subsequent, appended to the grant, cannot operate to make the deed a subject of forfeiture.

ID. — CREATING ESTATE UPON CONDITION. — To create a condition in a grant, apt and appropriate words must be appended to the grant, which *ex vi termini* import that the vesting or continuance of the estate is to depend upon the condition. An estate upon condition cannot be created, except when the terms of the grant will admit of no other reasonable interpretation.

APPEAL from a judgment of the Superior Court of San Diego County, and from an order denying a new trial.

The facts are stated in the opinion.

*Levi Chase, C. F. Holland,* and *J. E. Deakin,* for Appellants.

*M. A. Luce, Parrish, Mossholder & Lewis, Hunsaker, Britt & Lamme,* and *Sprigg & Carter,* for Respondents.

Vanclief, C.— This is an action for partition of pueblo lot No. 1111 of the lands known as the pueblo lands of the city of San Diego.

The appeal is from an interlocutory judgment determining the rights of the parties as to their respective interests in said lot, and from an order denying a new trial.

The rights of the appellants rest upon their deraignment of title from the city of San Diego under a deed from the city, executed October 25, 1869, to James W. Cullen, purporting to convey a tract in the southeastern portion of said lot, specifically described by metes and bounds, and forming a rectangular piece of land forty chains in length and twenty chains in width.

The rights of the respondents depend upon their deraignment of title from the city under two deeds from the trustees of the city, dated March 1, 1869, to William Evans, one for "that lot of land containing sixty acres lying in block No. 1111, according to the official map of said city, made by Charles H. Poole, A. D. 1856," and the other for "that lot of land containing forty acres lying in block 1111," according to the same map. The deed for the sixty acres recites, in substance, that the president and trustees, in compliance with a vote of the qualified electors of the city, at an election held May 25, 1868, in pursuance of the "act to repeal the charter of the city of San Diego, and to create a board of trustees," approved January 30, 1852, by which they are directed, authorized, and empowered to sell pueblo or city lands, the property of said city, sold the land and premises in said deed described, "for the sum of fifteen dollars, in gold coin of the United States of America, being at the price of twenty-five cents per acre, upon the conditions provided for and prescribed in a certain resolution or order of said board of trustees, made and entered on the eighth day of June, 1868; and said party of the second part has agreed to complete all improvements upon said

land by said resolution or order required to be done, and has fully paid said sum of fifteen dollars into the treasury of said city." But these recitals precede the granting clause, to which no condition is appended, and which is in the following words: —

" Now, therefore, the president and trustees of the said city of San Diego, parties of the first part, for and on behalf of said city, by virtue of the power and authority in them vested by the law, and for and in consideration of the said sum of fifteen dollars, gold coin of the United States, to them in hand paid by the said party of the second part, at or before the ensealing of these presents, receipt whereof is hereby acknowledged, have given, granted, bargained and sold, released and quitclaimed, and by these presents do grant, give, bargain and sell, release and quitclaim, unto the said party of the second part, his heirs and assigns forever, all the right, title, interest, and claim whatsoever of the said city of San Diego, of, in, and to the following described piece or parcel of land situate in the said city, and within the limits of the pueblo lands of said city, and more particularly described as follows: Being that lot of land containing sixty acres lying in block 1111, according to the official map of said city, made by Charles H. Poole, A. D. 1856, and on file in the office of the secretary of said board, together with all and singular the tenements and appurtenances thereunto in any wise pertaining.

" To have and to hold all and singular the above-described premises unto the said party of the second part, his heirs and assigns forever, as fully and absolutely as we, the said president and trustees, may or can by virtue of the power in us vested convey the same."

The deed for forty acres contained, in substance, the same recitals and provisions, the consideration being $1.25 per acre, amounting to $50.

The whole controversy relates to the admissibility and effect of these two deeds. Each was objected to by ap-

pellant, upon the ground that it is void for uncertainty in the description of the lot. attempted to be conveyed thereby.

It is further insisted by the appellant that these deeds, being of no effect, do not sustain the findings of the trial court, as the findings are based upon an erroneous construction of the deeds, to the effect that they respectively conveyed an *undivided* sixty acres and an *undivided* forty acres of block 1111, thereby making the grantee tenant in common with the grantor in the whole block, which contained 107 67-100 acres.

By stipulation of the parties, it is agreed that on March 1, 1869, the city of San Diego had title to the whole of pueblo lot 1111, and that the rights of the parties depend upon the validity and effect of the respective deeds from the city authorities to William Evans and James W. Cullen.

It appears that on June 8, 1868, at a special meeting of the board of trustees of the city, it was resolved "that the only way pueblo lands will be granted is as follows: One half of the purchase-money to be paid at the time of securing certificate. To occupy and improve the lands within six months from date of certificate, said certificate to be called for within one month after approval of petition. The value of improvements to the amount of land granted, viz., on a fraction of an acre up to forty acres, two hundred and fifty dollars, and on eighty acres, four hundred dollars; and if within one year from date of certificates the said improvements are not made, then the petitioner to forfeit the money deposited and the land to revert to the city; provided, also, that whenever the stipulated amount of improvements shall have been made on the land granted, then the petitioner may apply for a deed for the same on his paying the residue of the purchase-money. All surveys whatever to be paid for by the petitioner."

It is contended by appellants' counsel that, under these

resolutions, which were referred to in the recitals of the deeds to Evans, these deeds were given upon conditions precedent; and that, there having been no occupancy or improvement of the lands within six months, it was treated by the city as having been forfeited by non-compliance with the conditions, as evidenced by the fact that it (the city) afterward conveyed the property to James W. Cullen, under whom appellants claim title, and that this conveyance operated as a declaration of forfeiture.

The record does not show whether or not any part of the land in controversy was *ever* improved either by Evans or by Cullen, or by any person claiming under either of them. The only testimony relating to the subject is that of the county surveyor, who testified that " the block has never been subdivided into lots, except that recently some specific pieces of it have been sold by persons claiming under the Evans deeds, and these have been surveyed and located in blocks and lots."

No equitable considerations arising from improvements appear in favor of either of the parties, and the questions presented are pure questions of law as to their respective rights, as successors in interest to the city.

I think the trial court ruled correctly both as to the admissibility and the effect of the deeds to Evans. Those deeds did not purport to describe any specific part of block 1111 by metes or bounds, but by reference to the Poole map described the block as a whole. This description is as definite and specific as if the metes and bounds of the block as indicated upon that map had been inserted in the deed. It is the settled law of this state that a conveyance of a definite number of acres, or of any other definite quantity of land, within and as parcel of a larger tract of land well described, but without locating the land thus conveyed, is to be construed as conveying an undivided interest in the larger tract, provided the deed does not purport specifically to describe the smaller tract so conveyed, and fail

to do so with reasonable certainty. (*Schenk* v. *Evoy*, 24 Cal. 110; *Grogan* v. *Vache*, 45 Cal. 610; *Lawrence* v. *Ballou*, 37 Cal. 518; *Lick* v. *O'Donnell*, 3 Cal. 60; 58 Am. Dec. 383; *Wallace* v. *Miller*, 52 Cal. 655.)

In *Pipkin* v. *Ullen*, 29 Mo. 229, a grant of 750 arpens of land was described as the " balance and remainder of a tract " of 1,250 arpens of land which originally belonged to the grantor, " 500 arpens of which have been selected by the recorder of land titles as being ratified by the laws of Congress," and previously sold to another grantee; but it appeared that the 500 arpens so previously sold had not been selected as described. The court held, in view of the maxim, *Ut res magis valeat quam pereat*, that the portion of the description which referred to the 500 arpens as having been selected should be disregarded, and the deed construed as if 500 arpens had been previously sold without any other description, and as creating a tenancy in common of the two grantees in the whole tract in proportion to their respective interests.

Section 1643 of the Civil Code provides that "a contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." The reference to the land granted as "being a lot," without any description of metes and bounds, does not alter the nature of the grant as essentially one of quantity undivided at the time of the grant, it being the manifest intent of the parties that the lot should be definitely fixed by a future location and survey at the expense of the grantee.

The circumstance that the grant was by a municipal corporation does not affect its nature or exempt it from the rule of interpretation which requires the grant to be made effective, if possible. It is only in cases of uncertainty, "not removed by the preceding rules of interpretation," that section 1654 of the Civil Code requires a

contract between a public officer or body and a private party to be interpreted most strongly against the private party, as being the one who presumably caused the uncertainty. It is, indeed, a settled rule of construction that public grants to private persons are to be construed most strongly in favor of the grantor (Civ. Code, sec. 1069); but this rule presupposes the existence of an effective grant, and relates only to the extent of its operation. In all cases, it must be presumed that a grantor intended to make a valid grant of some property unless the contrary appears. In view of the cardinal principle of interpretation, expressed by the maxim above quoted, I think the grant to Evans should not be held void for uncertainty.

A contract may be explained by reference to the circumstances under which it was made, and the matters to which it relates (Civ. Code, sec. 1647); and in view of the known circumstances that these deeds were executed on the day of the sale, without any previous survey or subdivision of block 1111, and that the resolutions of the trustees provided for a survey at the expense of the grantee, the deed should be construed as if the description had been: "Being a lot of land" *to be located and. surveyed at the expense of the party of the second part,* "containing sixty acres in block No. 1111," etc. Had these words of the resolution been inserted in the deed, there could be no question that, until a partition should be made by some mode, the grantee would take an undivided interest in the block. (*Lawrence* v. *Ballou,* 37 Cal. 518; *Jackson* v. *Livingston,* 7 Wend. 136.)

The grant to Cullen, October 25, 1869, could not operate as a declaration of forfeiture of the lands granted to Evans, March 1, 1869, in any view of the case. The resolutions of the trustees, adopted June 8, 1868, provided for a forfeiture only upon failure to make the required improvements within one year. and if the resolution had been made an express condition of the grants

to Evans, the conveyance by the city to Cullen in less than one year from the date of the sales to Evans could not operate as a declaration of forfeiture before Evans was in default. But under the terms of the deeds to Evans, there could be no forfeiture of the lands. Contracts and laws declaring a forfeiture must be strictly construed, and a forfeiture can never take place by implication, but must be effected by express, unambiguous language. The terms of the resolution of June 8, 1868, only related to the forfeiture of contracts or certificates of purchase, and did not contemplate the execution of a deed until the required improvements should be completed. It is true that in the deeds to Evans which were made *on the day of the sale*, there is a *recital* of a sale upon the conditions prescribed in the resolution, and also of an agreement by Evans to complete all improvements required by them; but the *granting part and habendum* of the deed, in consideration of the full receipt of the purchase-money by the city, purports to vest in the grantee the full title of the city *in fee-simple absolute*, without condition precedent or subsequent.

To create a condition in a grant, apt and appropriate words must be appended to the grant which *ex vi termini* import that the vesting or continuance of the estate is to depend upon the condition. (*Craig* v. *Wells*, 11 N. Y. 320; *Jackson* v. *McClellen*, 8 Cow. 296.)

An estate upon condition cannot be created by deed except when the terms of the grant will admit of no other reasonable interpretation. Reciting in a deed that it is in consideration of a certain sum, and that the grantee is to do certain things, is not an estate upon condition, not being in terms upon condition, nor containing a clause of re-entry or forfeiture. (2 Washburn on Real Property, 4, 8.) A clause in a deed stating that it is made " on the express stipulation that a dwelling-house of not less than a certain value shall be put upon the land within a certain time " has been held not to con-

stitute a condition (*Stone* v. *Hayhton*, 139 Mass. 175);
and a recital in a deed that it is made for and in consid-
eration of a prior agreement between the parties, ac-
companied by a provision *following* the granting clause
that it is upon certain further express terms, conditions,
and reservations contained in such agreement, has been
held not to create an estate upon condition subsequent,
there being no provision for a re-entry for breach of
such terms appended to the grant, nor that the absolute
title granted should cease upon such breach. (*City of
Portland* v. *Terwilliger*, 16 Or. 465.) It is further to be
considered that no forfeiture appears in this case, for
the reason that the record does not show affirmatively
whether Evans or his successors in interest have or have
not made the improvements required by the resolution.
The grant being *in præsenti*, if the recitals preceding it,
as to the conditions of the contract of sale, and the agree-
ment of Evans to perform those conditions, could be
construed as conditions appended to the grant, they
could only be regarded as conditions subsequent (*Hihn*
v. *Peck*, 30 Cal. 269), and the burden would devolve upon
the city or its successors to prove a failure to perform
such conditions, in order to defeat the vested title. More-
over, the mere breach of conditions subsequent does not,
*ipso facto*, effect a reverter of the title until the proper
steps are taken to consummate the forfeiture. (*Rudy* v.
*City of Rock Island*, 97 U. S. 693; *Ferris* v. *Coover*, 10
Cal. 589–619.) No such steps appearing to have been
taken in this case after the time limited within which a
forfeiture might accrue, if at all, the title of the grantee
remains in him and his successors.

I think the judgment and order should be affirmed.

FOOTE, C., and GIBSON, C., concurred.

The COURT. — For the reasons in the foregoing opin-
ion, the judgment and order are affirmed.