[Civ. No. 2596. Fourth Appellate District.—March 18, 1941.]

ELLEN KEKICH, as Executrix, etc., Appellant, v. ISRAEL BLUM et al., Respondents.

Irl D. Brett for Appellants.

Harvey, Johnston & Baker for Respondents.

CONWAY, J., *pro tem.*—This is an appeal from a judgment in favor of defendants on their cross-complaint cancelling a note in the sum of $10,000 secured by a mortgage on real property which Thomas M. Kekich sought to foreclose. Thomas M. Kekich, the original plaintiff and appellant herein, died testate since the filing of this appeal and Ellen Kekich, his wife, was substituted herein, as executrix of his last will and testament, on March 3, 1941.

On the 23d day of July, 1935, Thomas M. Kekich was the sole owner of letters patent covering the process and "a method of treating liquid matter" for use in smelting operations. The defendant Israel Blum was the owner and proprietor of the Mojave smelter and on said date the parties entered into a written contract wherein Kekich granted to Blum the exclusive right to use said invention for a term of two years upon smelters thereafter built in California, and expressly permitting the use of the patented process in the smelter belonging to Blum near Mojave. The contract further provided that Kekich, the patentee, was obligated to "blow in" the Mojave smelter and to act as superintendent thereof for a thirty-day period. At the time of the execution of the written contract Blum and his wife executed a $10,000 note payable to Kekich, secured by a mortgage on real property in Kern County, conditioned upon the performance of the obligation of Blum under the contract to erect at least one additional smelter in California using the invention and process covered by the patent.

Kekich, alleging default in the payment of the promissory note, brought suit to foreclose the mortgage and defendants

filed a cross-complaint to cancel said note and mortgage alleging fraud and failure of Kekich to perform his part of the agreement. The court sitting without a jury rendered judgment for the defendants and cross-complainants, and plaintiff, after denial of a motion for new trial, has appealed from the judgment.

Appellant first contends that the court erred in concluding that the penalty provided in the contract was void as provided by section 1670 and 1671 of the Civil Code. She argues that the contract was unambiguous and certain, and upon its face was consistent only with the construction that the note and mortgage were given as consideration for the license and that it was the duty of the trial court to sustain its validity. Supporting this contention she cites the case of *Burns* v. *Peters,* 5 Cal. (2d) 619 [55 Pac. (2d) 1182], and other similar authorities. All of these cases affirm the general principle that the construction placed upon an instrument by the parties themselves is most persuasive except in those instances where a contrary ''conclusion is inescapable from a very reading of the instrument''. However, these cases cited by appellant do not discuss the question of void penalties but rather are concerned with ambiguities in language or expression, matters with which we are not here concerned. Our Supreme Court in *Robert Marsh & Co., Inc.,* v. *Tremper,* 210 Cal. 572 [292 Pac. 950], states the rule applicable to cases of the character under consideration here as follows:

''The law is that the 'liquidated damage' clause is void unless it is made to appear that the case comes within the exception provided by section 1671, *supra.* The burden rests upon the person who seeks to bring himself within the exception. Upon the face of the complaint and agreement itself, the provision which provides for the payment of liquidated damages is void. . . .

'' 'Facts must be pleaded and proven from which the court can say as a matter of law that the contract for liquidated damages is valid because from the nature of the case it would be impracticable or extremely difficult to fix the actual damage. The mere stipulations of the contract are insufficient for that purpose'.''

In *Kelly* v. *McDonald,* 98 Cal. App. 121 [276 Pac. 404], the court had under consideration a contract wherein failure

to begin actual drilling operations until a specified time provided a penalty against lessee as liquidated damages. The court said, at page 124:

"Damages may or may not result from the breach of a contract. Hence the wisdom of the rule which requires the pleader to allege not only that he has been damaged but also facts from which it may be ascertained that the claim presents a proper case for stipulated damages."

The trial court found from the evidence that the note and mortgage were given to secure the contractual obligation of Blum to build an additional smelter in California using the Kekich invention and that the penalty provided in the instrument was void in contravention of the Civil Code sections and the decisions heretofore cited. ▮ The failure of Blum to erect any additional smelters in California using the Kekich patent is excused by the actions of appellant in serving upon Blum an unwarranted cancellation of the contract as early as December 26, 1935. In this connection it was stipulated at the trial that on said last date appellant served upon respondent a notice of "revocation of license" specifying the specific defaults in performance by the latter. It was stipulated in open court at the time of the trial that "plaintiff had no legal cause or ground to revoke defendants' license and none of the grounds stated in said notice were true". The evidence introduced at the trial was amply sufficient to warrant the trial court in finding that respondents acted upon the false notice of revocation of license served upon them by appellant and thereafter considered the contract cancelled. After receiving the false notice of rescission respondents acquiesced in the cancellation of the contract and did nothing further towards performance of the same.

Appellant cites numerous authorities to the effect that a unilateral renunciation, even though unauthorized, does not *ipso facto* result in a breach of the contract. This, of course, is true where the adverse party fails to acquiesce in the notice of rescission. But in the case before us the evidence conclusively shows that the respondents treated the contractual obligations of the parties as terminated.

▮ Appellant's second contention is that he offered in evidence a copy of a first amended complaint verified by these respondents, in a former proceeding between the same

parties, for the purpose of showing that respondents in the said amended complaint alleged that the note and mortgage were given as a principal consideration for the exclusive use of said patent. The trial judge sustained an objection to the offer on the ground that it was incompetent, irrelevant and immaterial. Appellant now claims that this ruling was reversible error and that the judgment should be reversed.

The license contract itself specifically provides that the note and mortgage were given for the performance of respondents' obligation to build an additional smelter using appellant's invention, and it would seem to be immaterial whether or not respondents had theretofore verified a pleading reciting practically such facts as were not inconsistent with the position taken by them in the instant proceeding. In any event, the declaration would be only cumulative and was considered by the trial judge, who had the entire original proceeding before him, to be immaterial. In view of the fact that a copy of the amended complaint is not fully set forth in the transcript or briefs, we cannot say that the trial court erred in sustaining the objection.

■ As a third point, counsel for appellant admits that his client delivered an unwarranted revocation of license to respondents and that all of the alleged specifications therein contained were false and untrue. Nevertheless he maintains that as a legal proposition respondents were obligated to fulfill their part of the contract. As we have heretofore pointed out, respondents acquiesced in the revocation which was served after it was apparent that appellant was unable or unwilling to perform his part of the contract. It was admitted that appellant failed and neglected to "blow in" the Mojave smelter although it was fully equipped with his invention and was ready to "blow in" at the time of the execution of the contract on July 23, 1935. The evidence shows that appellant voluntarily abandoned further operations of the smelter and that it never "blew in", and that at the time he delivered his notice of cancellation on December 26, 1940, he was admittedly in default in the performance of the conditions imposed upon him under the contract.

■ Appellant's fourth complaint is that he offered in evidence a verified amended complaint by the respondents in an action filed subsequent to the delivery of the notice of revocation of license, in which respondents sought damages

against appellant for breach of contract and for declaratory relief. The court sustained an objection to its admissibility (it appearing that a nonsuit had been granted thereon in Los Angeles County). Appellant claims prejudicial error resulted from the ruling. Appellant claims that the allegations of the refused pleading would tend to show that respondents, at the time of the filing of the same, considered the license agreement to be at that time in full force and effect. The trial court had the opportunity of scrutinizing the entire pleading offered and in the absence of more specific information as to its exact contents we cannot say that error resulted from the ruling. It is entirely conceivable that respondents might attempt to predicate an action for damages and declaratory relief upon the course of conduct pursued by appellant when he wilfully and admittedly and without just cause served upon respondents a fraudulent notice of revocation of license. In other words, an attempt to allege a cause of action for damages and declaratory relief might be made even though the contractual obligations of the parties had been terminated.

■ The fifth argument of appellant is that the findings of the trial court that appellant made false and fraudulent representations which were known to be untrue and that the finding of the trial court that the smelting patent equipment was entirely worthless, were not supported by the evidence. In this connection it was conceded that respondents, although the owners of the Mojave smelter, were totally unfamiliar with smelting operations and knew nothing whatever of the processes necessary to carry on the operation of the smelter under the patented process. The evidence shows further that appellant made various representations as to his ability and former experience in smelting operations and in reference to the efficacy of the patented process in smelting. Appellant was given actual charge of the smelter which was ready to "blow in" for a thirty-day period and it is admitted that he was never able to put the plan into operation. He repeatedly stated: "It is no use, the smelter won't work." The evidence in the record shows that he abandoned the project and refused to return. In this connection he stated that his refusal was based upon the failure of respondents to pay moneys which appellant claimed they owed. However, upon the trial it is admitted that such claim was false and that re-

spondents never owed appellant anything and the trial court in our judgment was perfectly justified in finding not only that false and fraudulent representations were made by appellant which induced the execution of the contract, but also that the patented process installed in the Mojave smelter was worthless. It is true that there was a conflict in the testimony in this respect but the weight of evidence was peculiarly within the province of the trial court and its decision will not be disturbed where we find as here that its conclusions had ample support in the evidence.

Lastly, counsel for appellant contends that the trial court should have granted a new trial, stressing among other grounds, the illness of his client and his client's consequent inability to investigate the conduct of respondents after the date of the service of the false notice of cancellation of license with reference to ascertaining whether or not respondents acquiesced in the cancellation of the contract. It is of course regrettable that appellant's illness precluded this investigation but this scarcely can be made the basis for the granting of a new trial.

Appellant contends that respondents entered into certain options which, had they been satisfactorily investigated, would have shown that respondents considered the contract in full force and effect. Respondents, however, satisfactorily answered these contentions in counteraffidavits served and filed at the time of the hearing of the motion for new trial from which it appeared that all of respondents' actions with reference to any of the property concerned their own individual personal property in the Mojave smelter and had nothing whatever to do with the patented process installed in the smelter. It is apparent from the record that respondents never after the serving of the false notice of rescission exerted any dominion or control over any of the patented process and we are satisfied that the judgment should be affirmed.

The judgment is affirmed.

Barnard, P. J., and Marks, J., concurred.