[Civ. No. 18923. Second Dist., Div. Two. July 2, 1952.]

LOUIS VOGEL, Plaintiff and Appellant, v. BANKERS BUILDING CORPORATION et al., Respondents; ADOLPH G. ZALKUS, Intervener and Appellant.

William Katz for Appellants.

Max Bergman, Leo M. Goodman, Warren M. Goodwin, Fred Horowitz and Alvin F. Howard for Respondents.

FOX, J.—Defendant Berk has been engaged in the real estate business in Los Angeles for many years. Plaintiff Vogel was a manufacturer of ladies' suits and coats. These men, prior to the events leading up to this litigation, were neighbors. Vogel told Berk that he had "a little money lying around" and "he would like very much to be given an opportunity" to put some money in one of his real estate deals. Berk assured him he would be given such opportunity.

Thereafter, "around July, 1945," Berk learned that the 99-year leasehold covering the "Bankers Building" on Hill Street in Los Angeles was for sale. He contacted defendant Goodman who indicated he would like a half interest in the deal.

They thereupon entered into negotiations with Mr. Metcalf, the agent of the owner, resulting in Berk's making a deposit of $10,000 on August 22, 1945. This was in the form of a check of the Republic Realty Company, which was a corporation "controlled by" Berk and which was the instrumentality used by Berk and Goodman in making the final contract of purchase with the sellers on October 15, 1945.

In order to consummate the purchase, for which approximately $250,000 was required, defendants Berk and Goodman arranged for a loan of $150,000 from the Farmers and Merchants Bank upon the security of the leasehold, while the remaining sum of slightly in excess of $100,000 was to be provided by Berk and Goodman in equal amounts, in exchange for which each was to obtain a 50 per cent interest in the

entire transaction. It was proposed that a corporation to be known as the Bankers Building Corporation, a defendant herein, would be organized for the purpose of eventually taking over the leasehold, with Berk and Goodman each obtaining a 50 per cent stock interest. The procurement of the funds required in excess of the amount loaned by the bank was arranged independently by both Berk and Goodman. Berk contacted plaintiff Vogel, outlined to him the salient details of the proposed purchase and its contemplated ownership by a corporation subsequently to be formed, and informed him that he could participate in the venture to the extent of $10,000. On November 26, 1945, plaintiff delivered to Berk a check in the sum of $10,000 payable to the Republic Realty Company, and drawn upon the account of the Country Club Coat Company, of which Vogel was a partner with Adolph G. Zalkus, intervener in this action. Plaintiff used partnership funds in entering the deal with Berk and was acting in behalf of himself and intervener Zalkus.

After the $10,000 was transferred to Berk, the specific terms on which Vogel was to be included in the project, and the technique by which the acquisition, holding, management and operation of the building was to be achieved, which had previously been the subject of general discussion between Vogel and Berk, was incorporated in more definitive form in a letter dated December 15, 1945, which Berk sent to Vogel and whose pertinent sections read as follows: "The total purchase price was about $250,000, and it may probably run $3,000 or $4,000 more. We have borrowed from the Farmers and Merchants Bank the sum of $150,000 for five (5) years at three (3%) per cent interest. However, we must pay over to the bank all of the net earnings from this property until. our loan is liquidated, leaving us a net investment of about $100,000.

"I do not know exactly how the mechanics will work out as to whether all of the investors will treat their investment as a loan to the corporation, in which case they will receive a note from the corporation, or whether they will take stock, or part loan and part stock. It all depends which will be the most advantageous to all of us from an income tax standpoint.

"We have formed a new corporation called the Bankers Building Corporation, which takes over all of the assets of the old corporation which was known as the 629 South Hill Street Company. . . .

"Regarding your investment, you and I agreed as follows: After you have received the full amount of your investment,

you and I will share the profits fifty-fifty. This profit of course appertains to the proportion that $10,000 bears to the total investment, namely, one-tenth, so after you have received your money back, you will own five percent (5%) of the equity in the entire property. Up to that time you will be entitled to and will have as security, the entire ten per cent (10%)." Vogel signified his approval in writing on a copy of the letter which he returned to Berk.

Meanwhile, on November 23, 1945, defendant Bankers Building Corporation was incorporated and an escrow was opened during the course of which the Republic Realty Corporation assigned its contract of purchase to the defendant Bankers Building Corporation, which in turn purchased the building from the sellers in its own name. In addition to the $150,000 loan (which was fully repaid to the Farmers and Merchants Bank at the close of 1948), a total of $107,200 was deposited in escrow, of which Berk and Goodman each furnished $53,600. Of this sum of $107,200, $100,000 represented a part of the purchase price, while the remaining $7,200 was paid for commissions, escrow fees and other charges. The entire amount of $107,200 supplied by Berk and Goodman was treated by them as a loan and was thus entered on the books of the Bankers Building Corporation. By the time of trial, all amounts in excess of $101,000 had been repaid to Berk and Goodman. Of this unpaid obligation, an amount of $100,000 has been represented in the form of two promissory notes issued by the Bankers Building Corporation, each in the amount of $50,000, payable to Berk and Goodman respectively, each bearing an interest rate of 6 per cent per annum. The balance of $1,000, of which Berk and Goodman each provided $500, has been left with the corporation for the purpose of applying to the Commissioner of Corporations for a permit to issue stock in that amount.

The sum of $50,000 which is covered by the promissory note executed by the corporation to Berk and carried on its books as a loan, includes the $10,000 supplied by plaintiff to Berk; the balance is derived from $20,000 which Berk himself furnished, and $10,000 apiece from Ben Weingart and Alfred Lushing, whom Berk had interested in helping finance the purchase. Of Goodman's half-interest in the venture 10 per cent thereof was allocated by him to two of his associates, Max Bergman and Irving Shulman. Goodman was not concerned with the source of Berk's $50,000 investment and not until about 1950 did he become aware either of plaintiff's

agreement with Berk or of the fact that Berk had associated others in his side of the financing of the purchase. The interest on the $50,000 note was paid by the corporation to Berk.

From the date of incorporation to the time of trial on July 3, 1951, Berk and Goodman were the controlling directors and officers of the corporation. Not until January 24, 1951, three months after the filing of this action, did defendant corporation apply for a permit to authorize the issuance of 1,000 shares of stock, at $1.00 per share, to eight named individuals, the amount of shares allocated to each individual being that proportion which his financial participation in the purchase of the building bears to $100,000. Plaintiff's name does not appear among the designated shareholders, but it was apparently intended that he receive his shares from the number credited to Berk's name.

The evidence discloses that during the years 1946 to 1949, inclusive, Berk received annual interest payments of 6 per cent on his $50,000 note from the corporation, and he paid to plaintiff that share of the interest accruing to him by virtue of the $10,000 he had advanced to Berk. The payments were made by check bearing notations that they were for interest on the $10,000, which plaintiff deposited with his bank. In January, 1951, plaintiff for the first time rejected Berk's interest payment because of the dispute which culminated in the bringing of this action. Defendant Berk testified that prior to the trial he offered to return to plaintiff the $10,000 and to give him 5 per cent of the stock in the corporation from his own share just as soon as it was issued.

Plaintiff's amended complaint comprises three causes of action, the first being a suit for declaratory relief to determine the rights and obligations of the parties in the 99-year leasehold, in the defendant corporation, and the rights and duties of the parties towards each other. The second cause of action prayed the court to impress a trust in plaintiff's favor with respect to a 10 per cent interest in the said leasehold. The third cause of action was a demand that defendant corporation be compelled to apply for authorization to issue capital stock in the amount of $100,000 and that 10 per cent of such stock be issued to plaintiff. Zalkus filed a complaint in intervention alleging that Vogel's $10,000 consisted of partnership funds invested in his behalf, pleading and praying for relief substantially identical with plaintiff's demand and considered

in this appeal as having rights inseparable from those of plaintiff.

By its interlocutory judgment the court decreed that:

1. Defendant William Berk pay to plaintiff Louis Vogel and intervener Adolph G. Zalkus the sum of $5,000 each, within ten days after notice of entry of said judgment, with interest at 6 per cent per annum from November 1, 1949, to the date of payment;

2. Defendant Bankers Building Corporation make an application to the Corporation Commissioner of the State of California within 10 days after notice of the entry of said judgment, for the issuance of one thousand shares of the capital stock of said corporation for the total sum of $1,000;

3. Defendant Bankers Building Corporation deliver to plaintiff Louis Vogel twenty-five (25) shares, and to intervener Adolph G. Zalkus twenty-five (25) shares of said stock, if and when a permit is granted for the issuance of 1,000 shares of the capital stock of said corporation for the total sum of $1,000, upon payment to defendant Berk of the sum of $25 each by plaintiff and intervener.

It is from this judgment that plaintiff and intervener appeal.* One of their basic contentions is that the $10,000 which Vogel turned over to Berk constituted a capital investment in the Bankers Building Corporation and that the court erred "as a matter of law," in holding that the $100,000 advanced by the various parties to consummate the purchase was a loan. Their position cannot be sustained.

In determining the rights and duties of the parties to a contract the court seeks to ascertain their intention. When the meaning of a contract is uncertain and the parties have acted under it for a period of time the practical interpretation which they have thus given to it by their acts and conduct is cogent and persuasive evidence of their intent and the true meaning of the agreement. (*Moore* v. *Wood,* 26 Cal.2d 621, 629 [160 P.2d 772]; *Dougherty* v. *Cross,* 65 Cal.App.2d 687, 700 [151 P.2d 654]; *Universal Sales Corp.* v. *California Etc. Mfg. Co.,* 20 Cal.2d 751, 761 [128 P.2d 665].)

At the time plaintiff delivered the money to Berk it had not been determined just how the financing of the deal would be handled. That uncertainty is reflected in the letter from Berk to Vogel in which the former advised the latter

---

*Plaintiff and intervener will hereafter be referred to as "plaintiff."

that "I do not know how the mechanics will work out as to whether all of the investors will treat their investment as a loan to the corporation, in which case they will receive a note from the corporation, or whether they will take stock, or part loan and part stock." Thereafter notes in the sum of $50,000 each were issued by the corporation to Berk and Goodman providing for interest at 6 per cent. The books of the corporation reflected this indebtedness. Then for a period of four years Berk sent plaintiff his check for the interest on $10,000 as soon as the corporation paid its interest to him on the $50,000 note which he held. Vogel accepted these checks and deposited them without remonstrating with Berk. This conduct of the parties, together with the testimony of Berk, amply support the court's determination that the transaction between him and Vogel was a loan, and not a capital investment in the Bankers Building Corporation. The character of this transaction was essentially a question of fact which the trial court resolved adversely to plaintiff's position. We cannot therefore say as a matter of law that the money furnished by him did not constitute a loan with the right to share in the profits of the enterprise as agreed in the contract between him and Berk.

The testimony of Berk and Goodman that each would furnish half of the financing in excess of the bank loan; that the books of the corporation showed that each of them had advanced $50,000; that the corporation had issued notes to them representing such advances; that interest had been paid on said notes for a period of years; and that Goodman was unaware of plaintiff's dealings with Berk, or that plaintiff claimed any interest in the deal for some five years although plaintiff had met Goodman and knew he was an officer of the corporation, amply support the trial court's determination that the $100,000 was a loan.

Plaintiff cites a series of cases dealing with corporate debt financing in which contributions of capital to corporations have been treated for tax purposes as capital investments. These authorities do not control the rights and obligations of the parties *inter se*, since they are founded upon valid contracts which may be enforced according to their particular terms under state law, regardless of the interpretation which might be given the transaction in the application of a federal tax statute. (See *Burk-Waggoner Oil Ass'n* v. *Hopkins*, 269 U.S. 110, 114 [46 S.Ct. 48, 70 L.Ed. 183].)

■ The findings dispose of another of plaintiff's contentions: namely, that the defendant corporation is obligated to issue capital stock for the sum of $100,000 and to issue 10 per cent thereof, aggregating $10,000 in amount, to plaintiff. Obviously this cannot be done since the $100,000 represents a loan to the corporation by Berk and Goodman, and since Vogel's rights are derived from his contractual relations with Berk.

■ Plaintiff also argues that defendant corporation holds the Bankers Building as trustee for the persons who purchased it in the proportions according to which such persons contributed to the cash purchase payment of $100,000. To support this proposition he seeks to apply the theory of a resulting trust on the basis that the money furnished by plaintiff and the other parties constituted the consideration which was paid for the property, title to which was merely taken in the corporation's name. (*Lezinsky* v. *Mason Malt W. D. Co.*, 185 Cal. 240, 244 [196 P. 884].) That principle, however, is not applicable because the trial court has determined upon substantial evidence that the $100,000 was a loan to the corporation by Berk and Goodman. Consequently the money belonged to the corporation which paid the consideration for the title which it acquired.

■ Plaintiff urges that due to the failure of the corporation to issue stock, it should be regarded merely as an instrumentality of those participating in the venture and that Berk, Goodman, Vogel and the other participants in the transaction be treated as partners or joint adventurers. ■ The relationship of joint adventurers derives from the intent of the parties to enter into "a special combination . . . where in some specific venture a profit is jointly sought without any actual partnership or corporate designation . . ." (48 C.J.S., p. 801; see *Hansen* v. *Burford*, 212 Cal. 100, 109 [297 P. 908]; *Nelson* v. *Abraham*, 29 Cal.2d 745, 749 [177 P.2d 931].)

■ The evidence clearly shows that the parties contemplated the organization of a corporation in which management of the purchased property was to be vested and that there was to be no control by any of the associates as individuals. Since there is no showing of fraud of a nature to justify piercing the corporate veil, and the record discloses no agreement by the parties containing the elements of a joint venture nor such conduct in their operations as would imply that a joint adventure was created, we can find no basis for plaintiff's contention. (See *Enos* v. *Picacho Gold Min.*

*Co.,* 56 Cal.App.2d 765, 772 [133 P.2d 663].) "A partnership connotes coownership in the partnership property with a sharing in the profits and losses of a continuing business" (*Nelson* v. *Abraham, supra*), and its existence "depends primarily upon the intention of the parties as ascertained from their writings and from surrounding circumstances" (*Thomas* v. *Juarez,* 93 Cal.App.2d 846, 848 [209 P.2d 966]).

 No intent to create a partnership appears, and the contract and conduct of the parties do not as a matter of law establish such a relationship in this transaction.

Plaintiff also contends the promise to return one-half of the profits in the enterprise to Berk is void because: (1) it is not founded upon a consideration and (2) it is lacking in mutuality of obligation.

In raising these arguments plaintiff is proceeding upon the theory that the promise to return one-half of the profits to Berk is a separate and independent contract. In this he is in error. The agreement to return one-half of the profits was an integral part of the initial transaction. In Berk's letter to Vogel he stated that after the latter had received his money back they, i. e. Berk and Vogel, would share the profits 50-50 in the proportion that $10,000 bears to $100,000, namely, one-tenth. Thus after the return of plaintiff's $10,000 he would own 5 per cent of the equity in the property. Until the return, however, of his money, he would have the entire 10 per cent *as security.* In his testimony Berk explained the security feature was for protection in case either of them should die. It is thus plain that the reduction in the amount of plaintiff's stock interest upon the repayment of the $10,000 was simply a part of the original deal and in accordance with its terms, and supported by its consideration. (*Green* v. *Brooks,* 81 Cal. 328, 331 [22 P. 849].) A single consideration may support the several counterpromises made by the other party to the transaction. (*First Nat. Bank* v. *Pomona Tile Mfg. Co.,* 82 Cal.App.2d 592, 603 [186 P.2d 693].)

 There was mutuality of obligation here since the $10,000 was a loan to Berk and he could not get his share of the profits from plaintiff until he repaid plaintiff's loan. Berk was under the further obligation to account to Vogel for his proportionate share of whatever profits or interest he received until Vogel's $10,000 was repaid. This is far from being an illusory obligation as plaintiff contends.

■ Plaintiff challenges the sufficiency of the evidence to support a number of the findings of the trial court. The first of these reads as follows: "That on October 15, 1945, pursuant to negotiations commenced on or about August 22, 1945, Republic Realty Co., a corporation, entered into a written agreement to purchase the issued and outstanding stock of Six Twenty-nine South Hill Co., a corporation, hereinafter called '629 South Hill Co.', or, at its option, to purchase the assets of said corporation consisting principally of that certain 99-year lease described in paragraph III of plaintiff's amended complaint." Both Berk and Goodman testified they entered into negotiations with Mr. Metcalf, the owner's agent, in August, 1945, for the acquisition of this property. On August 22d Berk delivered to Metcalf the check of Republic Realty Co. for $10,000 as a down payment, and on October 15, a written contract (Plaintiff's Ex. 8) was signed by the realty company to purchase the issued and outstanding stock of Six Twenty-nine South Hill Company, or, at the option of Republic, to purchase the assets of said corporation. This evidence furnishes clear support for the questioned finding.

■ Plaintiff also contends there is lack of evidentiary support for the court's finding that Berk and Goodman each advanced $53,600 to defendant corporation, which sums were recorded on its books as loans payable to them. Both Berk and Goodman testified to having made such advances to the Bankers Building corporation and produced records of such payments. The general ledger sheets of defendant corporation show that such sums were recorded therein as loans payable to them.

■ Plaintiff makes similar attack upon the finding that the defendant corporation treated the moneys received from Berk and Goodman as loans. The evidence shows the corporation issued to each of them its note, and later a renewal thereof, for $50,000. Also, interest was regularly paid on these notes at 6 per cent per annum. He challenges, however, the finding that interest was paid by defendant corporation on these obligations. But the evidence shows such payments were made, the amounts thereof, and the dates on which they were made.

It is further contended there is no evidentiary support for the court's finding that Goodman did not enter into any contractual relation with plaintiff, and that he did not know of the existence of any agreement between Berk and plaintiff

until 1951. This finding is in accordance with the testimony of Goodman.

It is hardly necessary to specifically consider other challenged findings. Implicit in plaintiff's argument that the findings are lacking in evidentiary support is not that they are out of harmony with the testimony but that he disagrees with the legal consequences flowing therefrom.

Plaintiff objects to the finding of the trial court "That all of the allegations of plaintiff's amended complaint and the complaint in intervention, inconsistent with the findings of fact stated herein, are untrue," and argues that the court failed to make any findings on a number of allegations which he deems material to the issues and not inconsistent with the findings, or, if the court deemed the allegations inconsistent with the findings, then this "inconsistency finding" is unsupported by the evidence. A careful examination of the testimony and exhibits indicates that the findings are sufficiently specific and comprehensive, with the single exception hereafter noted, to support the judgment. The issues upon which findings were allegedly omitted were either immaterial to the determination of the case, covered by the finding that allegations inconsistent with the facts found to be true, are untrue, or not of such nature that a finding in plaintiff's favor would adversely affect the judgment rendered. (*Young* v. *Young Holdings Corp.*, 27 Cal.App.2d 129, 154 [80 P.2d 723]; *Strauch* v. *Bieloh*, 16 Cal.App.2d 278, 282 [60 P.2d 582].)

The interlocutory judgment, however, must be modified in one particular, namely: the provision requiring payment to Berk of $25 each by both plaintiff and intervener if, as and when the defendant corporation issues 25 shares of stock to each of them must be stricken. In Berk's letter to Vogel he stated "after you have received your money back, you will own five per cent (5%) of the equity in the entire property." There is nothing in the writing or in the evidence to indicate that the 5 per cent interest was subject to any condition other than the return of the $10,000, or that plaintiff would be required to pay for any stock that might be issued to represent such interest.

It is therefore ordered that the following language be stricken from paragraph 3 of the interlocutory judgment: "upon the payment to defendant Berk of the sum of $25.00 by plaintiff and upon payment to defendant Berk of the sum of $25.00 by intervener."

As so modified the judgment is affirmed, respondents Bankers Building Corporation, Leo Goodman and Sylvia Adler to recover their costs on appeal, respondent William Berk to recover his costs on appeal less fifty dollars ($50.00).

Moore, P. J., and McComb, J., concurred.

The opinion and judgment were modified to read as printed above and the petitions for a rehearing were denied July 25, 1952.

Appellants' petition for a hearing by the Supreme Court was denied August 28, 1952.