[Civ. No. 18981.   Second Dist., Div. Two.   Dec. 22, 1952.]

SAMUEL BALIAN, Appellant, v. HENRY RAINEY et al.,
Respondents.

John A. White for Appellant.

Killion & Clarke for Respondents.

FOX, J.—By a written agreement executed at Detroit, Michigan, in February, 1946, the parties former a partnership for the purpose of operating a machine shop, and manufacturing and selling dies, tools and other similar products. Later the partnership business was moved to Los Angeles where it continued in operation until plaintiff filed this action for dissolution and an accounting. Pursuant to stipulation, the court entered an interlocutory judgment dissolving the partnership and appointed a receiver to take over the assets of the partnership, and appointed a referee for the purpose of taking an accounting of all the partnership transactions, and to ascertain the amount that each partner was entitled to receive upon dissolution, and to report his findings to the court. The referee conducted hearings at which all parties were present and testified. Under the partnership agreement plaintiff Balian had a 20 per cent interest, defendant Rainey had a 60 per cent interest, and defendant Chakmakjian had a 20 per cent interest. They were to share profits and losses on this percentage basis. The agreement further provided that all parties should devote all their time, energy and business experience to the business of the copartnership, and that no salaries were to be paid to any of the partners. "However, in case of extended absence of any partner, that partner shall forfeit $50 per week for the time of the ex-

tended absence, which amount will be charged to the absent partner · and distributed to the remaining partners in the proportion that their respective shares of the profits and losses bear to one another.''

The referee found that plaintiff 'Balian did no work for the partnership for a period of seven weeks in 1948, that he was charged the sum of $350 for such absence, and that he did not then object to that charge; the referee also found that he did no work for the partnership at any time after January 1, 1949, a total of 91 weeks.

The question thus presented to the court was whether the account of plaintiff Balian should be charged $4,550 for such absence and the accounts of the other two partners appropriately credited. The trial court ordered such deduction and credits. It is from this order that plaintiff appeals.

The referee further found that during various portions of 1949 plaintiff engaged in building operations constructing two store buildings as a partner of another person and remodeling his own home; that on various occasions he went to the plant of the partnership and obtained tools for use in his building operations.

The problem presented in this case is one of determining the intention of the parties to the partnership agreement. ■ Effect must be given to such intention where it is not wholly at variance with correct legal interpretations of the terms of the contract. ■ Where a contract is ambiguous, the ''practical construction placed by the parties upon the instrument is the best evidence of their intention.'' (*Universal Sales Corp.* v. *California etc. Mfg. Co.*, 20 Cal.2d 751, 761-762 [128 P.2d 665] ; *Moore* v. *Wood*, 26 Cal.2d 621, 629 [160 P.2d 772] ; *Vogel* v. *Bankers Bldg. Corp.*, 112 Cal.App.2d 160, 166-167 [245 P.2d 1069].)

As a result of plaintiff's absence for seven weeks in 1948 a charge was made against him of $350 and he did not then make any objection to that charge, and the accounts of the parties were adjusted upon that basis. Such interpretation of the partnership agreement by the parties is ''cogent and persuasive evidence'' of their intent and the true meaning of the agreement (*Vogel* v. *Bankers Bldg. Corp., supra*), and supports the order of the trial court.

■ Plaintiff argues that a charge of $50 per week covering the period of his absence is in the nature of a penalty and its imposition works a forfeiture of his capital investment. He points out that the law abhors a forfeiture and that where

there are two possible constructions of a contract, one of which leads to a forfeiture and the other avoids it, the construction which avoids the forfeiture must be made if at all possible. (*Ballard* v. *MacCallum*, 15 Cal.2d 439, 444 [101 P.2d 692].) He then argues that a forfeiture may be avoided by saying that this clause ''was intended to be a withholding from the profits distributed during a profit and loss period of $50 per week for extended absences of any partner during that period.''

There is no suggestion in the agreement that the $50 per week which is to be ''charged to the absent partner'' who is on an ''extended absence'' is contingent upon the partnership's making a profit; nor is there any logic to reading such a condition into the agreement. In fact, the absent partner's ''business experience'' might be more sorely needed when the firm was operating in the red. It might well be in such circumstances that if the absent partner were actively participating in the partnership business the investments of the other partners would not suffer.

The fact that the firm was making a profit when plaintiff was absent for a period of seven weeks in 1948 and his account accordingly charged for such period at the rate of $50 per week does not justify an implication that charges for such absences were to be made only in the event the firm was making a profit. It was a mere coincidence that such was the fact during that particular ''extended absence.''

No significance should be attached to the fact that this provision for charging an absent partner $50 per week is in the paragraph of the agreement entitled Division of Profits. The correct title for that paragraph should be Division of Profits and Losses, because it sets out how the parties ''shall divide all profits and losses.'' The real explanation for this provision being in this particular paragraph is that the amount charged against a partner on an extended absence is to be ''distributed to the remaining partners in the proportion that their respective shares of profit and losses bear to one another.'' The amount of the charges against a partner as a result of his ''extended absence'' was thus to be divided between the other two partners on the same basis that profits and losses of the firm's operations were to be shared.

By the terms of the partnership agreement the parties were required to ''devote all their time, energy and business experience to the business of the Co-partnership.'' No salary was to be paid to any of the parties. Their ''time, energy and

business experience" may therefore be considered a partnership asset. It was recognized that one or more of the parties might have occasion for an "extended absence" thereby withdrawing such asset from the partnership for a period of time. Undoubtedly, to discourage such absences and because there were no salaries from which deductions could be made as a means of adjustment, and in order to insure substantially equal personal service contributions to the enterprise, the parties agreed upon the value of such services in the event one of the partners desired to avail himself of the privilege of being absent for an extended period, and that such amount should be "charged to the absent partner." As thus construed, the provision has a practical value and is in harmony with the plan and actual operations of the parties. Although the word "forfeit" is used, it is clear from the context of the agreement that it was not used in any strict or technical sense, and that a forfeiture was not in fact intended.

Plaintiff argues that the $50 per week charged for an "extended absence" has been waived by the conduct of the parties and that defendants are estopped to enforce it. Plaintiff's first basis for this argument is that the referee found that "although each partner was at varying times and for varying reasons actually absent from the affairs of the business, no charge was ever made by the partners because of the absence of any partner from the business except" for the previously referred to absence of the plaintiff in 1948. None of such absences, however are shown to have been "extended" absences, hence they do not come within the provisions of the partnership agreement authorizing a charge against such absent partner.

Plaintiff's second argument in support of his theory of waiver is that he asked his partners if it were true that they did not want him to work, and "they told him that so far as they were concerned, he could stay away." It was for the trial court to determine the significance to be attached to this statement and the inference to be drawn therefrom. It did not necessarily mean that plaintiff was at liberty to stay away and that no charge would be made against him therefor under the terms of the partnership agreement. This statement did not require the trial court to draw an inference that the other partners intended to waive such charge.

Plaintiff also argues that defendants should not be permitted to recover the sums credited to them due to his

absence because there is no pleading which raises the issue of liquidated damages. There is no necessity for such pleading since the problem here presented is not one for the recovery of liquidated damages because no breach of contract is herein involved. The charge against a partner on an extended absence is simply an agreed compensation to the firm for the exercise of a privilege which it was contemplated some, or perhaps all, of the members might at some time desire to avail themselves. This was an action for an accounting which naturally involved an interpretation and enforcement of the partnership agreement which was pleaded. The pattern for this interpretation of the agreement and for making this charge had already been established as a result of plaintiff's absence in 1948. The court was therefore justified in applying it to this later "extended absence."

Plaintiff argues that it is inequitable that defendants should profit by his absence when such absence was due in great part to their actions. In support of this argument plaintiff asserts defendants "destroyed the mutual confidence which is an all-important element between partners," and that by creating an attitude of tension and distrust they were able to keep plaintiff away from the business. As a basis for these inferences reference is made to the referee's finding that defendant Rainey suggested to plaintiff's wife that plaintiff pull out of the business. It is also asserted that defendants told plaintiff that they did not want him to work, and that so far as they were concerned he could stay away. Reliance is also placed on the referee's finding that plaintiff would have been uncomfortable in the presence of his partners. The first point to be noted is that the record does not support plaintiff's statement that defendants told him they did not want him to work. The comment of defendants to plaintiff that so far as they were concerned he could stay away cannot reasonably be construed as a refusal to permit him to participate in the firm's operations. As to the suggestion to plaintiff's wife that plaintiff pull out of the business, it should be borne in mind that Mrs. Balian is the mother of defendant Rainey and that Balian is the stepfather of Rainey. Although Mrs. Balian said she would convey to plaintiff what her son was telling her, there is no evidence that she did in fact communicate it to him. Even if plaintiff's wife did communicate to him the suggestion of defendant Rainey such statement could not be a justification

for plaintiff's refusal to render services to the firm. In addition to the referee's finding that plaintiff would have been uncomfortable in the presence of his partners, it should also be pointed out that no physical interference was offered nor were any threats made against his entering the firm's premises. It is also to be further noted that during this period, while plaintiff was engaged in his building enterprises, he went to the plant of the partnership and obtained tools which he used in these operations. It does not appear that any objection was made to the use by him of these tools or that any compensation was requested therefor by the other partners. It was for the trial court to draw inferences as to who was responsible for the alleged destruction of confidence between the partners and who was responsible for creating an attitude of tension or distrust and whether or not the circumstances justified plaintiff in staying away from the business. The trial court has impliedly drawn inferences on these questions adverse to plaintiff rather than in his favor. We cannot say, as a matter of law, that the court was not justified in so doing. Hence, it cannot be said that plaintiff was required to stay away from the business as a result of defendants' acts.

The inequity of plaintiff's construction of the partnership agreement is apparent. He agreed to devote his "time, energy and business experience to the business of the Co-partnership" without salary and in the event of his "extended absence" he would be subject to a charge of $50 per week for the benefit of the other partners. But he did no work for the partnership for 91 weeks, during which time, presumably, the other partners were actively devoting themselves to the partnership business. Throughout this period he was engaged in the construction business. He built two store buildings and remodeled his home, using in these operations tools which he obtained from the plant of the partnership. Yet when the assets of the partnership are to be distributed he claims he should receive the same share he would have received if he had been devoting his entire time and ability to the firm's business for these nearly two years. He wants to enjoy the benefits of the agreement but nevertheless seeks to avoid its burdens. Such a result could not have been contemplated by the parties.

The referee's report was adopted as the finding of the court. (*Board of Education* v. *Mulcahy*, 50 Cal.App.2d 418, 423 [123 P.2d 114].) Conflicting inferences may be drawn from these facts. It is, of course, our duty to draw

those which will support the action of the trial court. (*Levy v. Martin,* 109 Cal.App.2d 730, 731 [241 P.2d 568].)

The orders are affirmed.

McComb, J., concurred.

MOORE, P. J.—I dissent.

The interpretation of the contract adopted by the majority opinion does not square with prevailing ethical standards in trade, commerce and business. It is an emphatic approval of a man's taking from his partner the latter's substance without consideration. It is a reversal of the growing doctrine: "Live and help live." It even discourages the ancient adage, "Live and let live." Four thousand five hundred and fifty dollars is more than two thirds of plaintiff's capital investment in the machine shop. That he had no more at the time of the dissolution is essentially due to the mismanagement of the enterprise by defendants. They boldly assert that for 91 weeks plaintiff was absent from the shop. Hence, they were by him unhindered. Now, that they have reached a parting of their ways they confront him with a contract which, they contend, binds him to pay them $50 a week for the "time of an extended absence." Since the business earned no profits under their unmolested control, they assert that the last quoted phrase is their authority to transfer his possessions in sufficient amount to pay themselves $4,550 for his absence. To approve their ethics is, in effect, to give judicial recognition to the art of plundering one's associate by a squinted view of a written contract which could not reasonably have contemplated such tragical results as must follow the order if affirmed.

The basis for the claim of defendants' and of the trial court's judgment is the fifth paragraph of the contract, to wit,

"5. Division of Profits. That all parties shall devote all their time, energy and business experience to the business of the Co-partnership and shall divide all profits and losses as follows: Henry Rainey, 60%, Samuel Balian, 20%, Harry Chakmakjian, 20%.

"No salaries shall be paid to any of the partners. However, in case of extended absence of any partner, that partner shall forfeit $50.00 per week for the time of the extended absence, which amount will be charged to the absent partner and distributed to the remaining partners in the proportion

that their respective shares of profits and losses bear to one another.''

Such language relates solely to the division of profits. After designating the share to which each shall be entitled it specifically inhibits the payment of salaries to the partners. But in order to make effective the provision for all partners ''to employ their best endeavors to promote and further the interest of said copartnership,'' the contract undertook to restrict participation in the earnings by withholding from each partner $50 of his share of *the profits* for every week during which he performed no service for the business. That this is a more reasonable interpretation of the contract than to say that they agreed to forfeit a portion of a partner's capital for his breach of a covenant appears readily when it is realized how far-reaching it would be so to construe such a contract as to empower two partners to confiscate the investment of the third. At the time of dissolution, the appraisal of the respective interests of the partners fixed Balian's share at $6,569.84; Chakmakjian's at $6,564.84, and Rainey's at $22,439.52. By the order approving the referee's report, the court took $4,550 from Bailian and gave it to defendants as penalty for his absence from his business. Such a judgment is more devastating than storm or financial panic. Without proof that defendants had been injured in the slightest degree by Balian's absence from the business, more than two thirds of his investment was taken from him in addition to a shrinkage of $5,256 he had suffered while the business was under the domination of defendants.

The law abhors a forfeiture. (Civ. Code, § 1442; *Ballard v. MacCallum,* 15 Cal.2d 439, 444 [109 P.2d 692].) It cannot arise by implication, but can be effected only by clear and unambiguous language. (*Quatman* v. *McCray,* 128 Cal. 285, 289 [60 P. 855]; *Cleary* v. *Folger,* 84 Cal. 316, 321 [24 P. 280, 18 Am.St.Rep. 187]; *Cullen* v. *Sprigg,* 83 Cal. 56, 64 [23 P. 222].) There is no such language in the contract of these parties. While the clause declares a ''partner shall forfeit $50 per week for the time of the extended absence'' it is clear from the context that the intention was to withhold $50 a week from the dividends earned by the absent partner during the period of his absence. The language does not indicate an intention to deprive a partner of his capital investment at all. It does not bind a partner to forfeit anything but $50 weekly out of his share of the earnings. The entire purpose of the partnership was to make profits, not to take the capital of

one partner and give it to another. A fair interpretation of the contract compels the construction that in the event of a partner's extended absence he should pay a portion of his earnings to his partners in lieu of his contribution of labor to the business.

That the parties intended only profits should be "forfeited" is shown by their only interpretation of the contract prior to the unpleasant behavior of defendants after the fall of 1948. At that time there was no suggestion that any absent partner should be required to pay his associates any part of his investment on account of his "extended absence." When they disbursed "profits" on January 17, 1949, they deducted $350 from plaintiff's share of seven weeks' profits during his absence in the fall of 1948. At that time, when all was agreeable, there was no intimation that Balian should pay his partners out of his capital $50 per week for his absence. If such was their own interpretation in calmer hours of their business association, is it not more likely to have been their intention, in drafting the contract, to provide for a different division of the profits earned during an extended absence of one of them rather than out of his capital? (See *Woodbine* v. *Van Horn*, 29 Cal.2d 95, 104 [173 P.2d 17].)

But if it be conceded that the contract intended a forfeiture, such right was waived by defendants. The referee found that each partner was "at varying times and for varying reasons actually absent from the affairs of the business and that for such absences no charge was made except for Balian's first absence of seven weeks when his share of profits was reduced by $350. When the parties became estranged and Balian asked defendants whether they desired him to work, their reply was that so far as they were concerned he could stay away. If they had intended to demand a forfeiture for his absence, honesty to a fiduciary required the reply: "Stay on the job if you do not wish to forfeit $50 a week." During the 91 weeks of plaintiff's "extended absence" from the plant, not once did defendants suggest or intimate that they entertained the idea of enforcing a forfeiture of plaintiff's capital investment. By their conduct they evinced an intention to allow Balian to go his way and leave them in peace. Thereby they waived whatever right they had to a forfeiture. "Evidence tending to show the waiver of a forfeiture will be looked upon with kindly eyes." (*Knarston* v. *Manhattan Life Insurance*

*Co.*, 124 Cal. 74, 77 [56 P. 773]; *Panno* v. *Russo*, 82 Cal. App.2d 408, 412 [186 P.2d 452].)

Defendants never made mention of a damage they had suffered by virtue of Balian's absence from the plant. For the first time in their brief, they argue that paragraph 5 "discloses an intent to avoid any forfeiture and to provide the partners with a means of indemnification in the event that one or more partners desire to remain aloof from the actual labors of the partnership." Now, the clause must have intended either a "forfeiture" of a weekly sum of $50, or such sum as liquidated damages. If they intended a forfeiture, their recovery is stymied by the doctrines that the law abhors a forfeiture; the provision must be strictly interpreted against him who asserts the claim thereto; and it must be expressed in unambiguous language. If the clause be deemed one for liquidated damages, defendants again find themselves in a blind alley; the contract contains no provision expressly declaring a reason for providing for liquidated damages or that from the nature of the case it would be impracticable or extremely difficult to fix the actual damage in the event of a breach of a material covenant. (Civ. Code, § 1670.) Neither did they file a pleading declaring either of those facts. (Civ. Code, § 1671.) Liquidated damages cannot be recovered in the absence of such allegations. (*Kekich* v. *Blum*, 43 Cal.App.2d 525, 527 [111 P.2d 411]; *Olson* v. *Biola Coop. Raisin Growers' Assn.*, 33 Cal.2d 664, 668 [204 P.2d 10, 12 A.L.R.2d 112]; *Bay Shore Motors* v. *Baker*, 90 Cal.App.2d Supp. 895 [202 P.2d 865]; *Kelly* v. *McDonald*, 121 Cal.App. 121, 123 [276 P. 404].) The findings of the referee do not disclose that it was even suggested that the partnership was damaged by the absence of Balian, but rather does the invitation for him to remain away indicate defendants' opinion that their welfare was enhanced by his absence. Neither did they plead or prove any difficulty in demonstrating an actual damage. Even though paragraph 5 might have been intended as a provision for liquidated damages, that clause does not establish damage, nor could it mean the amount specified was payable in the absence of proof of damage. (*Kelly* v. *McDonald, supra*, p. 125.) The parties were related: Balian is Rainey's stepfather, Chakmakjian is Rainey's father-in-law. It requires no Socrates to understand that the personal feeling subsisting among the three men would have increased with Balian's daily presence in the plant. If so, with him daily present amidst such feeling, the business would have suffered actual detriment.

If such proof had been made under proper pleadings, it is readily to be seen that no actual damage could have been shown.

The order should be reversed.

A petition for a rehearing was denied January 7, 1953. Moore, P. J., was of the opinion that the petition should be granted.

Appellant's petition for a hearing by the Supreme Court was denied February 19, 1953.