[Sac. No. 2142.  In Bank.—December 12, 1914.]

In the Matter of the Estate of ADAM WARNER, Deceased. KATIE WARNER, Appellant, v. ADAM J. WARNER, Respondent.

HUSBAND AND WIFE—ANTENUPTIAL AGREEMENT—BREACH BY HUSBAND—
    ESTOPPEL AGAINST WIFE AFTER HIS DEATH.—Where an antenuptial
    agreement provides that the wife shall relinquish all claim to the
    estate of the husband in consideration of his payment to her of one
    hundred dollars a year and his support and education of her child
    during its minority, and he immediately breaks the contract and for
    ten years and up to the time of his death fails to support and educate
    the child, but the wife takes no action in regard to such breach but
    continues to accept the one hundred dollars per annum, she is barred,
    after his death, from asserting her former right to rescind and from
    obtaining letters of administration on his estate.

ID.—DECISION ON FORMER APPEAL—LAW OF CASE.—There is no merit in the claim that this question of estoppel was decided against the respondent by this court on the last appeal and has now become the law of the case.

ID.—UNDUE INFLUENCE OF HUSBAND—FINDINGS.—An express finding that the failure of the wife to rescind was not caused by the undue influence of her husband is unnecessary, if it is generally found that she is estopped to claim that the agreement is now not fully performed by reason of the specific facts stated.

ID.—RESCISSION OF CONTRACT — NECESSITY OF PROMPT EXERCISE OF RIGHT.—Rescission, when not effected by consent, can be accomplished only by the use of reasonable diligence to rescind promptly upon discovery of the facts which entitle the party to rescind, if he is free from undue influence and is aware of the right to rescind.

ID.—RIGHT OF RESCISSION—LOSS BY ACCEPTANCE OF BENEFITS.—Where one has a right to rescind a contract because of a breach by the other party, and, with knowledge of such right, continues thereafter to accept from the other party payments due thereunder, the right to rescind the contract is thereby barred.

APPEAL from orders of the Superior Court of Sacramento County granting letters of administration and refusing a new trial.   G. W. Nicol, Judge presiding.

The facts are stated in the opinion of the court.

A. A. De Ligne, and R. Platnauer, for Appellant.

A. L. Shinn, and W. F. Renfro, for Respondent.

THE COURT.—A rehearing in Bank was ordered in this cause after a decision in Department One of this court.   Upon further consideration of the case we are satisfied with the reasoning and conclusions reached in the opinion in Department, adopt that opinion as the opinion of the court in Bank and affirm the orders appealed from.

The opinion in Department written by Justice Shaw and concurred in by his associates in Department, Justices Angellotti and Sloss, is as follows:

"In this matter, the appellant Katie Warner, the widow of deceased, applied for letters of administration of his estate. The respondent, Adam J. Warner, a son of the deceased, filed a counter petition asking that letters be issued to himself.   He also filed a written opposition to the widow's petition.   The

widow in turn, contested his petition. After a trial of the issues thus presented, the court found in favor of the son and made an order directing that letters of administration issue to him. From this order and from a subsequent order denying her motion for a new trial, the widow appeals.

"There have been two previous appeals in the case. The son, in his written opposition, set up as a bar to the widow's right to letters, an antenuptial agreement between her and the deceased, whereby she relinquished all right, claim and interest in his estate, as heir or otherwise. In her answer thereto she alleged: 1. That the agreement was obtained by fraud; 2. That it was the result of a mutual mistake; 3. That it was without adequate consideration; 4. That Adam Warner in his lifetime waived the agreement; and, 5. That he had in his lifetime failed to perform it. A general demurrer to this answer was sustained and letters were awarded to the son. She appealed and the order was thereupon reversed by the district court of appeal, to which the appeal had been duly transferred. That court held that the agreement, on its face, barred her right to letters of administration, that the answer thereto was sufficient upon a general demurrer and that the court, in that proceeding, had jurisdiction to inquire into the facts upon which she sought to impeach the agreement. (See *In re Warner's Estate,* 6 Cal. App. 361, [92 Pac. 191].) Upon the second hearing in the superior court, findings were made against her upon all the issues and letters were again awarded to the son. Again the widow appealed to the supreme court and again the order was reversed. This reversal was placed on the ground that there was no evidence to support the finding that Adam Warner had performed the conditions of the contract on his part. In his petition and in his written opposition, the son had alleged such performance. Upon the first appeal this allegation was held to present a material issue. Upon the second appeal this statement upon the first appeal was held to have become the law of the case. (*In re Warner's Estate,* 158 Cal. 441, [111 Pac. 352].) It was further decided that the finding upon the issue as to performance was not sustained by evidence tending to show that the widow had waived performance by consenting to the nonperformance at or before the time of its occurrence. There was no finding that there had been such waiver.

"The antenuptial agreement provided that Adam Warner should take care of, keep, maintain, support, and educate the minor child of the widow, a daughter named Mary, then about twelve years old. It is claimed that Adam Warner failed to perform this covenant, in so far as it bound him to maintain and educate Mary during her minority. The son, after the last appeal, amended his pleadings by alleging a waiver of performance in this respect, and further by alleging that the widow was estopped to claim such failure of performance as a ground for the impeachment of the contract.

"In addition to the covenant to support her and to support and educate the child, the agreement provided that the said Adam Warner should pay the said Katie Warner 'the sum of one hundred dollars per annum out of his own property' and that at his death she should receive one thousand dollars from his estate. It was held upon the first appeal that this right to receive one thousand dollars was a mere claim and did not give her an interest in the estate sufficient to entitle her to administration as widow or heir. The antenuptial agreement was executed on May 17, 1889. The marriage took place on the same day. Mary Winkelman, the daughter, became of age on July 9, 1895, and about that time she was married to L. H. Slater.

"The court below found that the widow did not refuse to allow Adam Warner to perform the covenant for the minor child's support and education or prevent such performance by sending her away from home and that she did not by reason thereof prevent or waive such performance. It based its decision giving letters to the son solely upon the ground that the widow was estopped to take advantage of the nonperformance to defeat the agreement. Upon this point the finding is as follows:

"That said Katie Warner is estopped to claim that the said agreement was not in full force and effect at the time of the death of said Adam Warner, and is estopped from claiming that the covenants relating to the care, maintenance, support, and education of said minor child were not fully performed by said Adam Warner. That said estoppel arises out of the following facts: That said Adam Warner failed to perform said covenant relative to the care, maintenance, support, and education of said minor child immediately after the marriage of said Adam Warner and Katie Warner, and at all times sub-

sequent; that said minor child became of lawful age and was
married more than ten years before the death of said Adam
Warner, and, at all times after the marriage of said Adam
Warner and said Katie Warner, and up to the time of the
death of said Adam Warner, said Katie Warner, with full
knowledge of the default of said Adam Warner in the per-
formance of said covenants, continued to receive and accept
from said Adam Warner the annual payment of one hundred
dollars therein provided, and, at all times, the said Katie
Warner and the said Adam Warner treated the said agreement
as being in full force and effect, and each performed all of
the covenants of said agreement, except that the said Adam
Warner failed to perform the covenants relative to the care,
maintenance, support, and education of said minor child.

"It is not claimed that the specific facts set forth in this find-
ing are contrary to the evidence. The appellant insists that
they are insufficient, if true, to create an estoppel. This claim
we think is wholly untenable. Adam Warner died on Janu-
ary 22, 1906. His breach of the contract became complete in
July, 1895, at which time Mary, the minor child, became of
age and was married. The right which the widow now claims,
as against the validity of the agreement, is the right to re-
pudiate or rescind it because of this breach and thus to avoid
its results upon her. This right to rescind accrued to her, if
at all, immediately upon the breach becoming complete in
1895. If she then desired to avail herself of it by repudiat-
ing the contract and to claim immunity from its effect to de-
prive her of any share of the decedent's estate as heir or other-
wise, it was incumbent upon her to act promptly in the matter
and to refuse further recognition of the contract. Rescission,
when not effected by consent, can be accomplished only by
the use of reasonable diligence to rescind promptly upon dis-
covery of the facts which entitle the party to rescind, if such
party is free from undue influence, and is aware of the right
to rescind. (Civ. Code, sec. 1691.) Where one has a right
to rescind a contract because of a breach by the other party,
and, with knowledge of such right, continues thereafter to
accept from the other party payments due thereunder, the
right of such person to rescind the contract for that breach
is thereby barred. (*Delano* v. *Jacoby,* 96 Cal. 280, [31 Am.
St. Rep. 201, 31 Pac. 290]; *Oppenheimer* v. *Clunie,* 142 Cal.
320, [75 Pac. 899]; 2 Pomeroy on Equity Jurisprudence, secs.

817, 897, 917.)     The effect of such conduct is sometimes called a waiver of the right to rescind and sometimes it is said that it creates an estoppel against that right. The mere name given to the effect of the conduct is immaterial. Upon the breach of the covenant she had her option either to treat the contract as subsisting and to rely upon her right to recover damages for that breach, or to rescind it altogether and thereafter to refuse to recognize it or act under it and thenceforth to claim a restoration to her prospective rights in his estate at his death as his widow. Her conduct in subsequently receiving and accepting these payments up to the time of his death clearly evinces an intention not to rescind the contract but to insist upon its validity. After having so acted for the ten years succeeding the breach and having thereby induced him to continue making the payments of one hundred dollars each year as the contract provided, she cannot now assert her former right to rescind.

"It is suggested that the court does not expressly find that her failure to exercise her right to rescind was not caused by the undue influence of her husband, and, hence, that the presumption that she was under such influence must prevail and that this excuses her failure to exercise her right. We are of the opinion that this point is covered by the general finding that she is estopped to claim that the agreement is now not fully performed by reason of the specific facts stated. If she had been prevented from earlier rescission by his undue influence then she would not have been estopped. The finding therefore implies that she was not so prevented. Thus construing the finding, it is fully sustained on this point by the evidence. The parties were estranged during the last seven years of his life and in the year 1900 there was sharp litigation between them concerning the effect of this agreement upon her right to file a declaration of homestead upon his land. He brought an action to cancel the homestead declaration on the ground that it was filed without his consent and that the antenuptial agreement prevented her from claiming a homestead interest in his property. In that litigation she had the advice of her own attorney in regard to the agreement and its legal effect. This occurred several years after the complete breach of the covenant and six years before his death, during all of which time she continued to receive the payments.

"There is no merit in the claim that this question of estoppel was decided against the son by this court on the last appeal and has now become the law of the case. The court there, in reversing the order on the ground that there was no evidence to sustain the finding on the material issue of nonperformance, said that this omission was not cured by the fact that evidence had been introduced tending to show that the widow had waived the nonperformance by consenting thereto at or before the time of the breach. On the issue of waiver there was no finding. No other reference was made to the subject of waiver or estoppel. The fact that she accepted annual payments after the breach occurred is not even mentioned, nor is anything said about the effect of such acceptance. No rule of law was announced in that opinion which could become the law of the case on the facts presented upon the present appeal on the subject of estoppel or waiver.

"These comprise all the questions presented in support of the appeal. We find no ground upon which the order complained of can be deemed erroneous."

The orders appealed from are affirmed.

Angellotti, J., and Melvin, J., dissented.

Rehearing denied.