[L. A. No. 23310.   In Bank.   June 1, 1956.]

HAROLD McCARTHY, Plaintiff and Appellant, v. THOMAS SEYMOUR TALLY, Defendant and Appellant.

[L. A. No. 23311.   In Bank.   June 1, 1956.]

THOMAS SEYMOUR TALLY, Plaintiff and Appellant, v. HAROLD McCARTHY, Defendant and Appellant.

578

Combs & Hoose, Lee Combs and Harned Pettus Hoose for Appellant McCarthy.

Wilson & Wilson for Appellant Tally.

CARTER, J.—These two actions arose because of disputes concerning a 10-year lease of a summer resort known as Glenn Ranch owned by Tally and leased by him and his father to Mr. and Mrs. McCarthy.[1] In the first action Harold McCarthy sought declaratory relief and damages for fraud against Seymour Tally; Tally later brought an action against McCarthy in which he sought to establish certain rights under the lease in question and for the appointment of a receiver. The actions were consolidated for trial. The court made separate findings in each case and entered separate judgments. In the McCarthy case, the judgment was in favor of Tally; in the Tally case, judgment was rendered against McCarthy in the sum of $1,414.14 (unpaid rent and taxes), together with

[1]McCarthy succeeded to the interest of his colessee wife upon her death; Tally succeeded to the interest of his colessor father upon his death.

$2,000 as attorney's fees, $1,038.50 as costs and charges of the receiver appointed, $67.50 for certain other costs and disbursements, and it was concluded that plaintiff Tally was not entitled to recover any sum as liquidated damages. McCarthy was adjudged entitled to the sum of $821.32 for unearned premium of an insurance policy owned by him and retained by Tally. McCarthy appealed from the whole of the judgment in the McCarthy case except that portion denying Tally liquidated damages; Tally appealed only from that portion of the judgment in the Tally case denying him liquidated damages.

On July 17, 1944, T. L. Tally and Thomas Seymour Tally, as lessors, and Harold McCarthy and his wife, Barbara, as lessees, executed an agreement in writing by which the Tallys leased to the McCarthys certain real and personal property in the San Bernardino Mountains, known as the "Glenn Ranch." The lease was for a term of 10 years, at an annual rental of $10,000 and provided for the continuance of the operation of a hotel and summer resort then being operated by the Tallys.

The McCarthys entered into possession on August 1, 1944, operated the business and paid the rent until October 31, 1950. On or about November 28, 1950, Tally served McCarthy with a notice to pay rent or vacate the premises. On or about December 1, 1950, McCarthy served Tally with a notice that he had vacated and surrendered the property and that he was delivering possession to Tally. On January 4, 1951, a receiver was appointed to take charge of the business and the ranch.

In the McCarthy action, McCarthy sought damages on the theory that certain false statements had been made by Tally to him to induce the execution of the lease and that he had relied on such false representations. It was alleged that Tally had told him that the Glenn Ranch had produced a net annual income of $27,000 in previous years, and that the ranch was in "excellent," "very good," "wonderful" condition, and that these representations were known by Tally to be untrue. Concerning both allegations of fraudulent representations, the evidence was in sharp conflict. With respect to the net income of the ranch, Tally testified that he had not made the alleged statements, but that he had stated that because of a decided increase in the business in the year in which the McCarthys took over, it was expected that the net income would better $27,000; that the maximum income

he had ever made on the ranch was $22,000 the previous year. The trial court found that the alleged fraudulent misrepresentations as to income had not been made and the evidence is sufficient to support the finding.

In connection with the alleged representations concerning the condition of the ranch, the trial court found that Tally and his wife truthfully represented to the McCarthys that the property and facilities referred to in the lease were in "good operating condition." McCarthy testified that at the time he took over the operation of the summer resort the place was full of guests and reservations had been made for guests later in the year. The record shows that McCarthy had inspected the ranch; that he had been there as a guest of the Tallys on several occasions prior to leasing it; that his wife had been there almost every week in 1943 and quite often in 1944. The record also shows that the ranch was one which had been operated for many years as a summer resort and that McCarthy knew that some of the buildings were very old. This evidence is sufficient to support the finding of the trial court that the alleged fraudulent representations were untrue and that it was true that the ranch was in good operating condition. McCarthy's attempt to reargue the evidence and the weight thereof in this court is unavailing.

As we have frequently said, it is the general rule on appeal that an appellate court will view the evidence in the light most favorable to the respondent and will not weigh the evidence. An appellate court will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact and will not disturb that finding when there is substantial evidence in the record in support thereof (*Berniker* v. *Berniker*, 30 Cal.2d 439, 444 [182 P.2d 557]).

A more troublesome point is that relating to the provision for liquidated damages. Paragraph (28) of the lease provides: "That it is and will be impracticable and extremely difficult to fix the actual damages to said Parcel Four[2] in the event of termination of this lease by the lessors for cause, or by reason of abandonment of the demised property by the lessees, and that the sum of $10,000.00 shall be and said sum is hereby fixed as the amount of the liquidated damages in the event of such termination or such abandonment; that

---

[2] Parcel Four is described in the lease as "The said business and the goodwill thereof, and the right to the use of the trade name of GLENN RANCH."

said lessees have this day executed to the lessors a demand note for $10,000[3] secured by a deed of trust upon real property in Riverside County, California, to evidence and secure the payment of such liquidated damages; that said lessees may at any time deposit with the lessors the sum of $10,000.00 in lieu of said note and deed of trust;

"That in the event said lessors successfully prosecute proceedings to terminate this lease for cause, the Court may, in addition to actual damages by reason of loss with respect of Parcels One, Two and Three, award to said lessors liquidated damages in the sum of $10,000.00 by reason of loss with respect to Parcel Four;

"That in the event said lessees abandon and give up possession of said demised property to the lessors, said lessees shall be liable to the lessors for actual damages by reason of loss with respect to Parcels One, Two and Three, plus liquidated damages in the sum of $10,000.00 by reason of loss with respect to Parcel Four;

"That in the event of such termination or such abandonment, the liquidated damages aforesaid shall be paid to the lessors from said deposit or from the proceeds derived from a sale under said Deed of Trust; that the payment of actual and liquidated damages, as aforesaid, shall fully satisfy all obligations of lessees under and by virtue of the provisions hereof."

Paragraph (29) provides "That default shall not be deemed to have occurred with respect to any of the terms, covenants and conditions herein set forth, other than the payment of the aforesaid installments of rental, unless the lessees, within ten days after written notice of the nature of the asserted breach, shall have failed to cure such breach."

Section 1670 of the Civil Code provides that "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

Section 1671 provides that "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

Tally alleged, and the trial court found, that under the circumstances existing at the time the contract was entered

---

[3] Cash had been substituted therefor prior to trial.

into, it would have been impracticable or extremely difficult for actual damages to be fixed in the event of a breach of the conditions of the lease. In the McCarthy action, however, the trial court in amended findings found that in the event of a breach the damages would *not* be difficult of ascertainment. ■ It has been held that whether or not damages would be impracticable or extremely difficult to fix is a question of fact in each case for the trier of fact (*Rice* v. *Schmid*, 18 Cal.2d 382, 385 [115 P.2d 498, 138 A.L.R. 589]; *Better Food Mkts.* v. *American Dist. Telegraph Co.*, 40 Cal.2d 179, 184 [253 P.2d 10, 42 A.L.R.2d 580]; *Atkinson* v. *Pacific Fire Extinguisher Co.*, 40 Cal.2d 192, 195 [253 P.2d 18]) unless the circumstances existing at the time of making the stipulation are not in dispute and permit of but one conclusion.

■ Ordinarily, provisions for liquidated damages will not lie for failure to pay rent as provided in the lease. (*Rez* v. *Summers*, 34 Cal.App. 527, 529 [168 P. 156]; *Webster* v. *Garrette*, 10 Cal.App.2d 610, 615 [52 P.2d 550]; *Jack* v. *Sinsheimer*, 125 Cal. 563, 566 [58 P. 130]; *Knight* v. *Marks*, 183 Cal. 354, 357 [191 P. 531].) This is so because in such a case there is no presumption that the amount of damages which may result from a tenant's breach of a covenant to pay rent is impossible or extremely difficult to fix. In the present case, however, while the breach was failure to pay rent, the liquidated damage provision in the lease related to a possible injury to the goodwill of the business of operating a summer resort. Where a contract providing for the sale of the goodwill of a business was concerned, it has been held that an agreement for liquidated damages was proper, and that the plaintiff was required only to prove a breach of the contract in order to recover such liquidated damages (*Potter* v. *Ahrens*, 110 Cal. 674 [43 P. 388]; *Franz* v. *Bieler*, 126 Cal. 176, 181 [56 P. 249, 58 P. 466]; *Streeter* v. *Rush*, 25 Cal. 67, 72; *Nash* v. *Hermosilla*, 9 Cal. 584, 587 [70 Am. Dec. 676]).

■ We have here a breach of the contract occasioned by McCarthy's failure to pay rent. The record shows that the breach occurred in November after the summer resort had been closed for the season. The court found, specifically, that "there is no evidence establishing any damage to or loss of said goodwill" and concluded that Tally was not entitled to recover the agreed-upon sum of $10,000 as liquidated damages for the possible injury to the goodwill of the business. The record bears out the finding of the trial court

that the goodwill of the business had not been affected by McCarthy's failure to pay rent.

In *Kelly* v. *McDonald,* 98 Cal.App. 121, 125 [276 P. 404], it was held: "While the term 'liquidated damages' does imply that the parties have ascertained and agreed upon a sum which they assume will adequately compensate for a breach of the contract, this does not necessarily mean that the amount specified must be paid whether damages result from the breach or not. The very term of 'damages' contemplates an injury sustained or detriment resulting from the breach of a contract or the nonperformance of a duty. As the court said in *Starr* v. *Lee, supra* [88 Cal.App. 344, 348 (263 P. 376)]: 'We find authorities holding that recovery cannot be had when the evidence shows that no damage at all resulted from the breach.' The exception to the general rule to the effect that the predetermined amount of damages for the breach of an obligation is void, as that exception is expressed in section 1671 of the Civil Code does not purport to declare that an amount of liquidated damages agreed upon shall be *conclusively* presumed to be the exact figure which will adequately compensate for the breach of contract. This section merely asserts that it is 'presumed to be the amount of damages sustained.' *This presumption may be rebutted by proof that no detriment whatever resulted from the breach."* (Emphasis added.)

We held in *Better Food Mkts.* v. *American Dist. Telegraph Co.,* 40 Cal.2d 179, 187 [253 P.2d 10, 42 A.L.R.2d 580], that the amount agreed upon as liquidated damages "must represent the result of a reasonable endeavor by the parties to estimate a fair average compensation for any loss that may be sustained" (*Dyer Bros. Golden West Iron Works* v. *Central Iron Works,* 182 Cal. 588 [189 P. 445]; *Rice* v. *Schmid,* 18 Cal.2d 382, 386 [115 P.2d 498, 138 A.L.R. 589]; Rest. Contracts, § 339, p. 554).[4] There is nothing in the record to show that the sum of $10,000 agreed upon as liquidated damages represented a "reasonable endeavor" to estimate the actual damage to be sustained in the event of a breach

---

[4] This reasonable endeavor to ascertain, in advance, the loss which may result from a possible breach distinguishes a provision for liquidated damages from one for a penalty since the characteristic feature of a penalty is its lack of any proportionate relation to the damage which may actually stem from the breach of a contract (*Muldoon* v. *Lynch,* 66 Cal. 536 [6 P. 417]; *People* v. *Central Pac. R. R. Co.,* 76 Cal. 29 [18 P. 90]; *Dyer Bros. Golden West Iron Works* v. *Central Iron Works,* 182 Cal. 588 [189 P. 445]).

nor is there any finding on the subject by the trial court. As we have heretofore pointed out, the trial court in the Tally case found that damages would be difficult of ascertainment; in the McCarthy case, it was found that such damages would not be difficult of ascertainment. In the Tally case the trial court's conclusion that liquidated damages were not recoverable was obviously based on its finding that no actual damage had been sustained; in the McCarthy case, the conclusion was based on the finding that the provision for liquidated damages was void and ineffectual because damages were not difficult of ascertainment. Because of these inconsistent findings it is impossible for us to determine which of the two theories motivated the trial court's judgment in each case and we must, therefore, reverse the judgments.

The general rule in the United States with respect to provisions for liquidated damages appears to be that the plaintiff must plead and prove that at the time the contract was entered into damages in the event of a breach of the contract would be difficult of ascertainment; that the sum agreed upon represented a reasonable attempt to ascertain what such damages would be; and that a breach of the contract had occurred. A note in 34 A.L.R. 1336, 1341, points out that ''The majority of the cases hold that the amount stipulated in the contract as liquidated damages for a breach thereof, and which is regarded by the courts as liquidated damages, and not as a penalty, may be recovered in the event of a breach of the contract, even though no actual damages are suffered as a consequence of such breach'' (listing cases from Arkansas, Florida, Illinois, Indiana, Iowa, Kansas, Kentucky, Maryland, Michigan, Minnesota, New York, Oregon, Pennsylvania, Texas, Washington, West Virginia and Canada). The following statement from 15 American Jurisprudence, Damages, section 263, pages 696-697, is to the same effect: ''The majority of the cases hold that the amount stipulated in the contract as liquidated damages for a breach thereof, and which is regarded by the courts as liquidated damages, and not as a penalty, may be recovered in the event of a breach of the contract, even though no actual damages are suffered as a consequence of such breach. In many of the cases there are statements to the effect that actual damages need not be pleaded or proved in order to recover the stipulated amount. According to this view, the only evidence proper or necessary on this point is that the contract has been broken. In support of this rule it is said that the question of reasonableness is

to be determined as of the time of the making of the contract —that is, in regard to any possible amount of damages which may be conceived to have been within the contemplation of the parties at that time—and that neither the intention of the parties nor the construction of the contract can depend upon occurrences happening afterward, which were not in their contemplation when the contract was made.

"Some courts, however, have held that where no damage has been sustained from the breach of the contract, the amount which the contract stipulates as liquidated damages cannot be recovered, even upon the assumption that the provision is to be regarded as one for liquidated damages, rather than a penalty, and that a mere technical breach resulting in nominal damages is not sufficient, although, in some of the cases apparently so holding at least, the real explanation of the result would seem to be that the court, in view of the lack of actual damages, regarded the provision in question as one for a penalty, although denominated by the contract itself as 'liquidated damages.'

"Under a provision construed to be a penalty nothing can be recovered for a breach of the contract where no actual damages appear."

We hold that in order to recover on a contract provision for liquidated damages the plaintiff must plead and prove that at the time the contract was entered into damages in the event of a breach would be impracticable or extremely difficult of ascertainment; that the sum agreed upon represented a reasonable endeavor to ascertain what such damages would be; and that a breach of the contract had occurred. In other words, no actual damage is necessary in order to recover under a liquidated damages provision provided that the case is, in other respects, a proper one under the conditions set forth in section 1671 of the Civil Code. As we have heretofore pointed out, there is, in the case under consideration, no finding that the sum of $10,000 represented a reasonable endeavor by the parties to ascertain what the damages would be in the event of a breach, and the findings as to whether, at the time the contract was entered into, the damages would be extremely difficult or impracticable of ascertainment in the event of a breach were fatally inconsistent.

The liquidated damages provision here involved related to the goodwill of a summer resort business. As we have heretofore pointed out, it has been held that a breach

affecting the goodwill of a business may cause damages which, at the time the contract was entered into, may be impracticable or extremely difficult of ascertainment. Whether or not a breach such as occurred here in the nonoperating months of the summer resort was within the contemplation of the parties is an issue to be pleaded and proved on a retrial of the actions. It appears to us that if such a breach was within the contemplation of the parties, the sum of $10,000 might not represent a reasonable endeavor to ascertain what the damages would be in the event of such a breach and that the provision might be invalid because of the time at which the breach occurred.

Any language in *Kelly* v. *McDonald,* 98 Cal.App. 121 [276 P. 404], and *Starr* v. *Lee,* 88 Cal.App. 344 [263 P. 376], contrary to the views herein expressed is disapproved.

McCarthy contends that the court erred in appointing a receiver and that the court wrongfully determined the costs and charges of such receiver. ■■■ The clerk's transcript in the Tally case shows that the receiver was appointed on January 4, 1951, and that no appeal was taken from the order appointing the receiver. Such an order is appealable (Code Civ. Proc., § 963, subd. 2) and will not be reviewed on appeal from the final judgment (22 Cal.Jur., § 61, p. 476; *Weygandt* v. *Larson,* 130 Cal.App. 304, 310 [19 P.2d 852]).

Other contentions of the parties do not merit discussion.

The judgments are reversed.

Gibson, C. J., Shenk, J., Traynor, J., Schauer, J., Spence, J., and McComb, J., concurred.