[Civ. No. 6263.   Fourth Dist.   Oct. 26, 1960.]

WILLIAM D. CRAIG, Appellant, v. KIRK CLIFFORD KUIVENHOVEN, Respondent.

Otis Babcock for Appellant.

Clarence Sprague and Jean Wunderlich for Respondent.

SHEPARD, J.—This is an action for damages arising out of an accident which plaintiff claims was caused by the alleged negligent operation of an automobile by defendant. After trial by jury, verdict and judgment were rendered for defendant, motion for a new trial was denied, and plaintiff appeals.

Plaintiff's first contention is that the evidence was insufficient to support the verdict and judgment. ▇ As the Supreme Court has so frequently said:

". . . it is the general rule on appeal that an appellate court will view the evidence in the light most favorable to the respondent and will not weigh the evidence. ▇ An appellate court will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact and will not disturb that finding when there is substantial evidence in the record in support thereof (Citations.)." (*McCarthy* v. *Tally*, 46 Cal.2d 577, 581 [3-4] [297 P.2d 981].)

▇ Viewing the evidence in this light, the record before us shows that the accident complained of occurred May 12, 1958, on Newport Boulevard near the Santa Ana Country Club in Orange County, about one-tenth of a mile south of the Bristol Street crossing, and an estimated 2 miles north of the 19th Street crossing. Near the 19th Street crossing three northbound lanes narrow into a bottleneck of one, with a maximum speed of 35 mph. Somewhere to the north of the 19th Street crossing, the highway again opens up to two lanes, and a maximum posted speed of 55 mph. At the point of the accident, the highway has two 10-foot-wide northbound lanes and the distance from the outer lane to a tree struck by plaintiff's truck is 7 feet. Near this point a sign on a post gives warning of the approach to the Bristol Street crossing by the words "Signal Ahead," and on the pavement in letters nine feet high is the word "Signal." Sixty feet to the north, in similar size letters, is the word "Ahead." The evidence respecting the start of converging lanes is not clear, but apparently plaintiff estimates that 75 feet beyond the word "Ahead" the two lanes start to merge to another bottleneck of one lane near the Bristol Street crossing. The signs and converging lanes are shown in a photograph facing north from the scene of the accident. The jury viewed the scene of the accident. This view of the road and lane arrangement was evidence. Their conclusion about sign locations, merging traffic lanes and distances is not in our record. (*Gates* v. *McKinnon*, 18 Cal.2d 179, 183 [114 P.2d 576].)

Plaintiff, in this highway situation, was traveling north from his day's work. There were numerous other cars on the road. In the 35-mile zone, defendant, driving a 1949 Ford passenger car, overtook and passed plaintiff's truck and a number of other cars. On reaching the 55-mile zone, plaintiff speeded up, also passing other cars. Defendant was then traveling 50

to 55 miles per hour in the inner lane, in which he continued for about two-tenths of a mile. Defendant saw plaintiff rapidly overtaking him, also traveling in the inner lane. When plaintiff was about three car lengths behind, defendant crossed into the outer lane. He then heard a squealing of brakes, saw in his rearview mirror a cloud of dust and plaintiff's truck swinging broadside, covering both lanes, and that no other cars were stopping. He proceeded north to the first place he could turn around, and came back to the scene of the accident to offer help.

Plaintiff claims that defendant, without warning, swung to the inner lane and then when plaintiff (thinking defendant was about to turn to the left into the old airport road) pulled into the outer lane to pass him, defendant swung into the outer lane, hit somewhere on the left front of plaintiff's truck; that plaintiff then took his foot off the brake, "stepped on the gas to bring the truck back onto the pavement, the rear end fishtailed," the rear bumper caught a tree, threw the truck out of control, it traveled 103 feet farther, struck another tree, and finally stopped in an open field.

Upon defendant's reappearance at the scene of the accident, plaintiff said, "You are the man that clipped me." Defendant replied, "I didn't clip you." A traffic officer, a disinterested motorist who had stopped, as well as plaintiff and defendant, were then present. No one found any scratches or dents of any kind on defendant's car which could in any way be attributed to the accident.

Plaintiff was 60 years of age, was wearing trifocal lens glasses, and was driving a 1950 model Studebaker ¾-ton pickup truck which he had himself overhauled about a month previously, including replacement of brakes. He had built on the bed of the truck a box with a wooden frame 4 feet above the bed and eight feet long, weighing about 250 pounds, the rear bumper was specially welded and extra heavy. There were carpenter's tool boxes in the truck bed, weighing 4 to 500 pounds, a box of mechanic's tools weighing about 25 pounds, and miscellaneous canvas, tow chain, and car tools weighing about 50 pounds. Thus, the total extra weight on the truck was 725 to 825 pounds, plus the extra heavy bumper whose weight was not given. The time of the accident was 4:45 p. m. Plaintiff was heading for a garage in Santa Ana, about 6 miles away, which plaintiff knew would close at 5 o'clock p. m.

Defendant testified plaintiff was traveling 60 to 65 mph.

674

The disinterested motorist who stopped and who had been traveling behind plaintiff, estimated plaintiff's speed at 60 miles per hour or possibly 65. The traffic was fairly heavy, with cars both in front of and behind plaintiff and defendant.

In this state of the record, we cannot say, as a matter of law, that the jury's verdict was without evidentiary support.

The defense of contributory negligence was pleaded by defendant. Plaintiff has not given any transcript reference to evidence directly stating that defendant failed to give a signal for his movement from the center to the right-hand lane. While there may be a possible inference from the testimony of plaintiff that this was true, our examination of the record shows that he did not directly testify that defendant gave no signal for defendant's movement to the outer lane. The testimony of witness Wainwright indicates that Wainwright may not have had a clear view of the rear of defendant's car at the time such signal would have been given. On the other hand, defendant, in answer to a single, conjunctive question by plaintiff's counsel on cross-examination, denied that he either turned to the right abruptly or failed to signal such movement. Furthermore, the evidence is clear and positive that plaintiff himself did not signal his change of lane. Since defendant was watching plaintiff in his rearview mirror, the jury was entitled to assume that had plaintiff given such a signal, defendant would have seen it and been made aware of plaintiff's intention.

In addition, the evidence of Wainwright indicates the possibility that plaintiff did not apply his brakes when he says he suddenly came upon defendant's car before him in the center lane, for Wainwright saw no brake lights. While Wainwright testified he saw no turn signal given by defendant, it is not clear whether he was in a position to have seen such a signal had it been given, for plaintiff's truck was between him and defendant's car, the exact positions not being given.

From the foregoing, it will be seen that there is a conflict of evidence on whether or not defendant moved abruptly from the inner to the outer lane. There is also a conflict of evidence on whether or not defendant gave a signal for such movement. There is also a conflict of evidence on whether or not plaintiff applied his brakes on the alleged sudden appearance of defendant's car in front of him in the inner lane, but the evidence is clear, direct and without conflict that plaintiff did not himself signal his change of lane before he moved to the outer lane. It is also undisputed that when he

was on the shoulder of the road, plaintiff stepped on the gas, instead of slowing down.

Thus, the jury was not required to believe that there was any abruptness in the movement of defendant from the inner to the outer lane, nor were they required to believe that this movement was made without any signal from defendant. Such a movement is not only an ordinary act of courtesy, but is a requirement of law when a faster-moving vehicle is observed approaching from the rear. (Veh. Code, § 21654.) The jury could well have believed that a proximate cause of the accident was plaintiff's negligence in traveling at excessive speed under all the factual circumstances here present. We find no merit in plaintiff's contention that the evidence is not sufficient to support the verdict.

▆▆▆ Plaintiff next contends that the trial court gave the following instruction and that this was reversible error:

"No. 131. The mere fact that an accident happened, considered alone, does not prove that it was caused by the negligence of anyone."

This court has no means of surmising, even from the briefs, what other instructions were given. We may not presume that the application of the mere-happening-of-the-accident instruction was not fully explained to the jury. We cannot assume that any instruction on res ipsa loquitur was offered or given.

▆▆▆ It is true, as is pointed out in *Alarid* v. *Vanier,* 50 Cal.2d 617, 625 ▆▆▆ [327 P.2d 897], that where "the uncontradicted evidence warrants the application of the doctrine of res ipsa loquitur, it is error" to give the mere-happening-of-the-accident instruction. ▆▆▆ However, as was pointed out in *Guerra* v. *Handlery Hotels, Inc.,* 53 Cal.2d 266, 272 [6] [1 Cal.Rptr. 330, 347 P.2d 674]:

". . . the plaintiff cannot successfully complain on appeal of the giving of this instruction where res ipsa loquitur is not applicable as a matter of law and no instruction on the doctrine is requested or given." See also *Shaw* v. *Pacific Greyhound Lines,* 50 Cal.2d 153, 156-157 [1-3] [323 P.2d 391].

▆▆▆ We cannot say, from the record before us, that the giving of the instruction was prejudicial. (*Smith* v. *Walker,* 163 Cal.App.2d 179, 180 [2] [328 P.2d 1048].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J., concurred.