188 Cal.App.2d 141 (1961)
10 Cal. Rptr. 347
ANTHONY R. MACHADO et al., Respondents,
v.
ALFRED MACHADO, Individually and as Executor, etc., Appellant.
Docket No. 18849.
Court of Appeals of California, First District, Division One.
January 11, 1961.
*143 Machado, Feeley & Machado for Appellant.
Wool & Richardson and Donald B. Richardson, Jr., for Respondents.
*144 COAKLEY, J. pro tem.[*]
Plaintiffs-respondents are son and daughter-in-law of Anthony J. Machado, deceased. The defendant-appellant is also a son of the decedent, and the executor and sole devisee of his father's estate under a will dated January 25, 1957.
For purposes of brevity the decedent will be referred to herein as A.J.; the plaintiff, Anthony R. Machado, as Tony; the plaintiff, Viola Machado, as Viola; and the defendant as Alfred.

Nature of the Case
The complaint alleges: (1) that on August 19, 1949, plaintiffs and A.J. executed a written agreement by the terms of which A.J. agreed to devise his one-half interest in a 40-acre ranch to plaintiffs if they would move onto the ranch, operate and maintain it, and care for and maintain A.J. during his lifetime; that on the same day A.J. made a will devising his interest in the ranch to plaintiffs, and thereupon delivered a copy of the will to plaintiffs; (2) that plaintiffs performed their obligations under the agreement; and (3) that A.J. breached the agreement by later executing a will leaving his interest in the property to defendant, Alfred. Plaintiffs seek specific performance of the agreement of August 19, 1949, and a declaration that Alfred holds the property in trust for plaintiffs' benefit.
Defendant's position as set out in his answer, and supplemented by the pretrial order, is that (a) the agreement was prepared by an attorney selected by plaintiffs, that A.J. did not understand what he was signing, and his signature was therefore procured by fraud; (b) the consideration flowing from plaintiffs to A.J. was inadequate in relation to the value of A.J.'s interest to be devised to plaintiffs; (c) plaintiffs failed to perform their obligation; (d) mutual rescission; and (e) repudiation and abandonment by plaintiffs.

Findings, Conclusions and Judgment
The findings of fact and conclusions of law on all material issues were in favor of plaintiffs and against the defendant.
Judgment was entered directing defendant to transfer all of the estate's interest in the property to plaintiffs, together with the rents and profits therefrom since the date of A.J.'s death, upon payment by plaintiffs to Alfred of certain sums, approximately $1,450, to reimburse Alfred and the estate for *145 sums advanced in connection with expenses of the last illness of A.J. We affirm the judgment, with a minor modification noted below.
Appellant's brief is devoted largely to attacking the judgment on grounds of insufficiency of the evidence, including the lack of credibility and impeachment of Tony's testimony. He specifically points to the fact that in its memorandum the court stated that Tony's testimony was largely unworthy of belief. He fails to mention that the court said the same thing about his own testimony, and particularly, that Viola told the truth as she remembered it. [1] The testimony of one witness worthy of belief is sufficient for the proof of any fact. (Code Civ. Proc., § 1844; Minikin v. Hendrix (1940), 15 Cal.2d 338 [101 P.2d 473].) [2] The credibility of witnesses must be determined by the trial court. (Henry v. Phillips (1912), 163 Cal. 135 at 146 [124 P. 837, Ann.Cas. 1914A 39].)
[3] As to the sufficiency of the evidence, it is settled that "... an appellate court will view the evidence in the light most favorable to the respondent and will not weigh the evidence. An appellate court will indulge all intendments and reasonable inferences which favor sustaining the finding of the trier of fact and will not disturb that finding when there is substantial evidence in the record in support thereof." (McCarthy v. Tally (1956), 46 Cal.2d 577, 581 [297 P.2d 981]; Craig v. Kuivenhoven (Oct. 1960), 185 Cal. App.2d 670 [8 Cal. Rptr. 500].) [4] Alfred's "attempts to reargue the evidence and the weight thereof in this court is unavailing." (McCarthy v. Tally, supra.) [5] Our task ends when we determine that there is substantial evidence to support the trial court's findings. (Viner v. Untrecht (1945), 26 Cal.2d 261 [158 P.2d 3]; see also Key v. McCabe (1960), 54 Cal.2d 736 [8 Cal. Rptr. 425, 356 P.2d 169].) We find such evidence in this case. On the issue of performance by plaintiffs, and on that of fraud, the evidence favoring plaintiffs is strong. The issue of adequacy of consideration appears to have been abandoned on this appeal. And well it might for here again the evidence favoring the plaintiffs' position is convincing.
A more serious question is posed by Alfred's contentions of mutual rescission, repudiation and abandonment by plaintiffs. In support thereof Alfred points to testimony to the effect that (1) the ranch was operated by Tony under a loose partnership arrangement with A.J., thereby rescinding the agreement of August 19, 1949, and substituting the parol partnership *146 arrangement; (2) that plaintiffs and A.J. listed the property for sale; and (3) plaintiffs filed a partition suit against A.J. to which A.J. answered and cross-complained praying therein for partition. The fact that the property was offered for sale and that a partition suit was filed and was still pending at the time the action was tried is not disputed by plaintiffs. However, they dispute Alfred's interpretation of the legal effect of such evidence, and point out that the trial court found against Alfred on those issues.

1. Partnership Agreement as Rescinding Agreement of August 19, 1949.

The written agreement of August 19 did not spell out any details. It provided simply for plaintiffs to operate the ranch and to maintain and care for A.J. until his death, in return for his agreement to devise his interest in the property to them. It did not by its terms preclude an arrangement wherein the parties might share the work, and the profits and losses. Actually A.J. did little more than putter about the ranch. Viola testified that A.J. retained the proceeds of the sale of a part of the property to the City and County of San Francisco, and from various sales of ranch produce, all without the consent and against the demands of plaintiff that he account for such receipts. There was also testimony that Tony did not account to A.J. for crop proceeds. Partnership tax returns were filed by Tony and A.J.
[6a] Assuming that a partnership was entered into, that fact did not necessarily constitute either a mutual or unilateral rescission or abandonment of the agreement of August 19. Such an arrangement primarily favored A.J. as compared with what would be a more reasonable interpretation of the agreement of August 19, viz., that if plaintiffs operated the ranch and maintained A.J. they would be entitled to all the proceeds. A.J. received what he bargained for under the August 19 agreement, i.e., care and maintenance by plaintiffs from 1949 until his death in 1957. We know of no reason why the two contracts, assuming that there were two, could not be independent of one another. Certainly the fact that plaintiffs, the unquestioned owners of a one-half interest in the property, maintained A.J. without payment until his death, gives rise to a strong inference that they did not intend rescission. As to A.J., his continued acceptance of the benefits in accordance with the contract for more than seven years, with knowledge of his purported right to rescind because of the *147 partnership arrangement, constitutes a bar to rescission at this late date. (Estate of Warner (1914), 168 Cal. 771 [145 P. 504].)

2. Repudiation and Abandonment by Offering the Property For Sale, and By the Partition Suit.

These acts must be examined in the light of the agreement of August 19 and the circumstances surrounding the relationship of the parties. It is clear that A.J. was extremely difficult to get along with; that he continued to live with plaintiffs, permitting them to carry out their part of the agreement, viz., to operate the ranch, and to maintain him, yet he deposited sale proceeds of both land and crops in his personal account and refused to account for same, and refused to cosign checks on the ranch account in payment of ranch debts. For these and other reasons Viola found it necessary to take outside employment to meet ranch and household debts while continuing to feed and care for A.J. Little wonder that plaintiffs were exasperated and sought a solution to the difficult situation. Tony testified that A.J. told him that Alfred and Alfred's attorney had advised him that refusing to sign checks on the ranch account was a good way to break the agreement of August 19. Tony also testified that his purpose in instituting the partition suit (later amended to include an accounting) was to pressure A.J. into signing checks with which to pay ranch bills. While the court found Tony and Alfred "to a large extent unbelievable," other evidence of A.J.'s conduct raises a reasonable inference that it was he who in fact sought to break the agreement and that he was urged to do so by Alfred. Appellant cites cases purporting to support his contention of mutual abandonment, repudiation, and anticipatory breach. They correctly state the general doctrine for which they are cited. But each deals with a factual situation readily distinguishable from the facts of our case.
[7] As stated in Guerrieri v. Severini (1958), 51 Cal.2d 12 [330 P.2d 635], cited by appellant, "`An anticipatory breach of contract occurs on the part of one of the parties to the instrument when he positively repudiates the contract by acts or statements indicating that he will not or cannot substantially perform essential terms thereof....'" (P. 18.) [8] And as stated in Gold Min. & Water Co. v. Swinerton (1943), 23 Cal.2d 19 [142 P.2d 22], also cited by appellant, "repudiation is ordinarily a question of fact and intent, and must be determined by the facts in the particular case." (P. 28.)
*148 We may not speculate as to the intentions of the parties in listing the property for sale or in filing the partition suit and cross-complaint, particularly in view of the trial court's finding that plaintiff did not repudiate or abandon the agreement. [6b] The fact which stands out most prominently is that plaintiffs operated the farm without salary and maintained A.J. until his death, a period of over seven years. This fact alone is strong evidence that there was no "positive repudiation" by plaintiffs, or an intent on their part to rescind, repudiate or abandon their agreement.
In retrospect it might have been less hazardous for plaintiffs to have pursued a different remedy. Just what would have been an alternative and adequate remedy appellant does not say. [9] But as pointed out in Atchison, etc. Ry. Co. v. Superior Court (1939), 12 Cal.2d 549 at 555 [86 P.2d 85]: "Where a party misconceives his remedy, he is not in general precluded thereby from availing himself of the proper remedy. [Citations.] That the proper basis of plaintiff's claim presents a difficult problem ... [is apparent]. A mere mistake of judgment should not result in depriving one of valuable rights. (Agar v. Winslow, 123 Cal. 587, 592 [56 P. 422, 69 Am.St.Rep. 84].)" (Emphasis added.) [10] Unless, therefore, the acts of plaintiffs in offering to sell or in filing the partition constituted a repudiation or abandonment as a matter of law, the judgment must be affirmed. Counsel has not referred us to any authority, and we know of none, holding that such is the result as a matter of law.
As additional grounds for reversal appellant urges (1) that the findings are contradictory in certain particulars, and (2) that the trial court erred in failing to make a finding requested by him, viz., that the attorney who prepared the agreement of August 19, was plaintiffs' attorney, and that A.J. was not advised by personal counsel. The first contention is hyper-technical and without merit. The answer to appellant's second contention is that the trial court was not required to make the requested finding. This is so because the request was for a finding on an evidentiary matter and not as to an ultimate fact. [11] "It is the established rule that ultimate facts, only, should be found. It is usually unnecessary and improper to incorporate evidentiary facts in the findings." (Mammoth Gold Dredging Co. v. Forbes (1940), 39 Cal. App.2d 739 at p. 753 [104 P.2d 131].) [12] Alfred's answer alleged fraud. Fraud, therefore, was the issue, the ultimate question of fact. The fact that A.J. may not have been advised by an *149 attorney (though advised and guided throughout by Alfred) and that plaintiffs' attorney prepared the agreement (this, too, is debatable since Tony testified that Alfred's present attorney had been Tony's attorney theretofore) does not establish either a confidential relationship between plaintiffs and A.J., or fraud. At most it would permit an inference or raise a rebuttable presumption thereof. By its express finding that none of the allegations of Alfred's answer were true, the court rejected the inference or rebuttable presumption and appropriately made its finding of ultimate fact, viz., no fraud. As required by Code of Civil Procedure, section 632, the findings as filed were complete and they "fairly disclose the court's determination of all issues of fact in the case" necessary to support the judgment.
The only modification of the judgment which is required is that, in place of the court's direction that "within 10 days from the date of service upon him of Notice of Entry of Judgment herein ... [appellant] make, execute and deliver to plaintiffs a good and sufficient Quit Claim Deed and a Transfer and Assignment [sic] all of his interest as Executor or otherwise in and to the undivided one-half interest" there be substituted a requirement that appellant shall cause A.J.'s interest in the ranch to be distributed to plaintiffs in due course of administration. The trial court is directed to modify said judgment accordingly.
Respondents shall recover costs on appeal.
Bray, P.J., and Duniway, J., concurred.
A petition for a rehearing was denied January 31, 1961, and appellant's petition for a hearing by the Supreme Court was denied March 8, 1961.
NOTES
[*] Assigned by Chairman of Judicial Council.