[Civ. No. 8099.   Third Dist.   Oct. 21, 1952.]

D. C. HILL et al., Appellants, v. JOHN HEARRON, JR., et al., Respondents.

Barr & Hammond for Appellants.

Charles Lederer and Herbert P. Welch for Respondents.

PEEK, J.—This is an appeal by plaintiffs from a judgment denying them relief in their action for an accounting of their alleged interest in the partnership previously entered into between themselves and defendants.

The evidence shows that on May 6, 1949, plaintiffs D. C. Hill and his wife and defendants John Hearron, Jr., and wife entered into a partnership agreement for the purpose of growing potatoes during the 1949 crop season. According to the terms of the agreement land was to be leased and certain enumerated initial expenses were to be borne by each in order to get the crop in the ground; that is, plaintiffs

were to advance the funds necessary for the purchase of seed potatoes and advance funds necessary for the purchase of the fertilizer while defendants were to advance the funds necessary to lease the land and get the crop in the ground. The agreement further provided that when the potatoes had been planted an accounting was to be had of all costs up to that time; that if either party had advanced more money than the other an adjustment would be made between them so that each would bear one-half of the expenses and thereafter each partner was to advance one-half of the costs of operation. Defendant John Hearron, Jr., was to actively manage the operations and receive a salary for such services. Plaintiff D. C. Hill was to do the rogueing and certification of the potatoes for which he was to receive a reasonable wage. Additionally the contract provided that no money could be borrowed on behalf of the partnership nor could any liens be placed against the partnership property without the consent of both partners. Lastly the agreement provided:

"If first partners or second partners or either of them should default in the terms of this contract then such defaulting partner shall forfeit all of his interest in said lease, also his or their interest in said crop of potatoes and the remaining partners shall immediately become the owner of said lease and said partnership property and business."

In accordance with the agreement, operations were commenced. Hill furnished the seed potatoes and fertilizer, charging the same against his account in another partnership in which he was interested. However, such costs were not actually paid until October 27, 1949, after the harvesting of the potatoes was completed. According to Hill's figures these items amounted to $8,666.75. Hearron, Jr., who was entirely financed by his father, leased the land and paid for the planting at a cost of approximately $8,000. Pursuant to the terms of the agreement the parties met on July 26, 1949, to effect an adjustment of their accounts. Although no definite accounting was made at that time the parties appeared to have tentatively agreed that they were substantially even on the expenses to date, and for future expenses Hill advanced the sum of $2,000 which sum was thereafter matched by Hearron by advancements made during the months of August and September.

Prior to the commencement of the harvesting operations Hearron notified Hill that this work would cost approximately $12,000 and requested Hill to advance his share. Although

promising to do so Hill failed to provide his share. However, subsequently he did furnish sacks to the approximate value of $1,800. As the result of Hill's failure in this regard Hearron's father put up the required additional money.

On October 5, 1949, following the completion of the harvesting Hearron gave notice to Hill that he had elected to declare a forfeiture of Hill's interest in the partnership under the provisions of the contract heretofore quoted. There is testimony that following this notice Hearron offered to return to Hill the sum of $3,011; this figure apparently represented the sum of $2,000 cash advanced by Hill at the time of their original accounting and the sum of $1,011 paid as freight on the seed potatoes and fertilizer. There was further testimony on behalf of defendants that if plaintiff Hill would advance his share of the harvesting expenses and produce receipts for his expenditures at the outset of the agreement defendants would allow him to continue to participate in the partnership.

The trial court found that the Hearrons had advanced the cash rental for the land and otherwise fully performed their part of the agreement; that the Hills had defaulted under the same and in particular that they had failed to account to the Hearrons for the amount of the purchase price of the seed, fertilizer and freight, and that they had failed to furnish any evidence that the same had actually been paid for by them. The court then found that up to October 5, 1949, plaintiffs had paid no money for these items nor advanced any money except the sum of $3,011, and had failed to advance their part of the harvesting expenses. In light of the record we have been unable to rationalize the amount so found to have been advanced by plaintiffs. The court further found that the Hearrons had invested the sum of approximately $8,000 representing the rental payment of $5,600 and $2,400 for labor, together with the necessary funds for harvesting the crop. The judgment which was entered was that plaintiffs take nothing, and that all moneys coming into the hands of Hearron Jr's father, who was previously appointed as trustee, should be paid over to defendants herein.

On appeal the Hills make three contentions: (1) That they had substantially performed their part of the contract and any failure on their part, if such there was, was occasioned by the Hearrons' prevention thereof; (2) if they were compelled to further perform, such performance was waived by respondents, and (3) that the particular provisions of

the contract heretofore quoted, under the rule of this state, cannot be construed as to work a forfeiture of their interest.

There can be no question but that the terms of the contract clearly and unambiguously provide for a forfeiture if a breach of the terms thereof occurs. Also there can be no question but that appellants' failure to provide their share of the money necessary to harvest the crop was a material breach. Furthermore there appears to be sufficient evidence to warrant the finding that the breach was wilful under Civil Code, section 3275.

■ The question then is, whether, under the facts and circumstances, this court may give effect to the forfeiture provisions provided for in the contract between these parties. We conclude, in view of the latest pronouncements by the Supreme Court of this state on the subject, that it may not. In *Freedman* v. *Rector, Warden & V. of St. Matthias Parish,* 37 Cal.2d 16, 20 [230 P.2d 629], it was held that while the vendee, who had wilfully breached his contract for the purchase of real property, was for that reason without the terms of Civil Code, section 3275, and could not recover his down payment, less damages, caused by the breach thereunder, he could nevertheless obtain the same relief because "the damage provisions of the Civil Code, together with the policy of the law against penalties and forfeitures provide an alternative basis for relief independent of section 3275."

The court there said, at page 21:

"To permit what are in effect punitive damages merely because a party has partially performed his contract before his breach is inconsistent both with section 3294 of the Civil Code limiting the right to exemplary damages and sections 1670 and 1671 dealing with liquidated damages. 'A penalty need not take the form of a stipulated fixed sum; any provision by which money or property would be forfeited without regard to the actual damage suffered would be an unenforceable penalty.' (Citation.) Such penalties cannot reasonably be justified as punishment for one who wilfully breaches his contract. Not only does section 3294 of the Civil Code express the policy of the law against the allowance of exemplary damages for breach of contract regardless of the nature of the breach (citation), but if a penalty were to be imposed it should bear some rational relationship to its purpose. A penalty equal to the net benefits conferred by part performance bears no such relationship. It not only fails to take

into consideration the degree of culpability, but its severity increases as the seriousness of the breach decreases . . .

"Moreover, to deny the remedy of restitution because a breach is wilful would create an anomalous situation when considered with section 3369 of the Civil Code. That section provides that 'Neither specific nor preventative relief can be granted to enforce a penalty or forfeiture in any case . . .,'." (See, also, 25 S.C.L.R. 387; *Crofoot* v. *Weger*, 109 Cal.App.2d 839 [241 P.2d 1017].)

It cannot be denied that if in this case, as in the Freedman case, enforcement of the forfeiture provisions of the contract be allowed, "money or property would be forfeited without regard to the actual damage suffered." (P. 22.)

Furthermore as noted above a penalty should bear some rational relationship to its purpose. As the court there said at page 22: "A penalty equal to the net benefits conferred by part performance bears no such relationship. It not only fails to take into consideration the degree of culpability but its severity increases as the seriousness of the breach decreases."

While that case was concerned with forfeiture in a vendor-vendee situation, the policy of the law against forfeitures and penalties, the damage provisions of the Civil Code, and the reasoning there adopted are equally applicable here. For those reasons we hold the forfeiture provision of this contract cannot be enforced without regard to the calculation of the damages actually caused by the breach.

Although, as previously noted, the contract herein gave to the nondefaulting partners the right to termination of same in the event of default, under the rule of the cited cases the forfeiture provision was ineffectual. ■ Therefore since plaintiffs had an interest in the assets of the joint venture at the time they were acquired and since their partnership interest therein continued until the time of the cancellation of the agreement, then, as between the parties, that interest in the partnership property still exists notwithstanding the termination of the agreement. As stated in *Martin* v. *Burris*, 57 Cal.App. 739, 748 [208 P. 174] : "The cancellation of the contract did not in any manner affect the rights of either party in the assets theretofore acquired."

Here, however, the trial court strictly enforced the forfeiture clause and in doing so took no evidence nor made any finding concerning damages, nor did the court find that it

would be impracticable or extremely difficult to ascertain such damages. To the contrary the court inferentially determined, as evidenced by its memorandum opinion, that since the forfeiture clause was absolute, no accounting was necessary.

From what has heretofore been said it follows that plaintiffs were entitled to an accounting of their interest in the assets of the joint venture at the time of the termination of the agreement, subject to whatever damage respondents suffered by reason thereof.

The judgment is reversed and the cause remanded for further proceedings in accordance with the views herein expressed.

Adams, P. J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied November 17, 1952, and respondents' petition for a hearing by the Supreme Court was denied December 18, 1952. Schauer, J., was of the opinion that the petition should be granted.