BALTHIS, J.
 

 This is an appeal from a judgment declaring the interests of plaintiffs and defendants in a partnership venture. The case involves the legal effect of provisions in the partnership agreement providing for calls for the contribution of partnership capital and for the adjustment of profit and loss ratios for failure to meet such calls.
 

 Plaintiffs Feiger and Green joined with defendants Gerard and Winchell to form a partnership for the purchase and resale of unimproved desert acreage. Green and Feiger each had a 20 per cent interest, Gerard and Winchell each had a 30 per cent interest. At a later date Winchell assigned one-half of his interest (15 per cent) to defendant Bonanno.
 

 Plaintiff Green put $12,500 into the partnership and initially he was the only capital contributor. The other parties contributed their knowledge and experience. Feiger was a certified public accountant who brought Green (one of his long-time clients) and defendants together. Feiger was to handle the finances. Gerard and Winchell found certain properties in which the partnership was to invest.
 

 Since the partnership was organized with a very “thin” equity, the partners recognized that additional capital from themselves might be necessary and included a provision in their “Agreement of Partnership” to provide for this contingency. Paragraph 7 reads as follows:
 

 “7.
 
 Additional Contributions to Capital.
 
 In the event that additional capital may be required by the partnership in excess of the original contributions made, as aforesaid, all partners shall contribute equally. Calls for additional capital
 
 *125
 
 shall he made only for the purposes of liquidating mortgage indebtedness, liens, loans or other encumbrances.”
 

 The agreement also recognized that certain of the partners might not want or be able to contribute capital pursuant to a call. This contingency was provided for in paragraph 10.
 

 “10.
 
 Alternate Profit and Loss.
 
 It is agreed by all partners that additional contributions shall be made equally, for the purpose of liquidating liens, loans or encumbrances. In the event any one or more partners fail to contribute his equal share of the additional contributions required, such partner or partners shall have their proportionate share of the profit reduced by 20% for each such failure. It is expected that there will be calls for five (5) additional contributions. An example of the effect on profits for failure to make one such contribution, the following tabulation is set forth:
 

 “Assume Irving Feiger fails to make one capital contribution, the profit ratio will be as follows:
 

 The first land transaction which the partnership ventured into was the purchase of 480 acres of unimproved desert land which defendants Gerard and Winchell had contemplated purchasing when they joined the partnership. The purchase price for this property was approximately $70,000. Plaintiff Green’s $12,500 was used as a down payment, the balance of the purchase price being evidenced by notes and trust deeds.
 

 This venture proved very successful for the property was sold for approximately $177,000 on a deferred payment basis, for an eventual profit of approximately $107,000. The down payments received practically covered the cost of the land and the balance of the sum due was evidenced by notes secured by trust deeds. Payments on the notes which totaled $115,000 and held by the partnership have been received without interruption.
 

 On the recommendation of Gerard and Winchell the partnership decided to purchase 80 additional acres of unimproved land in Kern County from Ernest Bjorkland (hereinafter referred to as the Bjorkland property). A down payment of $11,000 was required and the four partners (Bonanno was not yet a partner) contributed $500 each, of which $250 was
 
 *126
 
 quickly returned from the remainder of a partnership bank loan of $10,000.which had been secured from the Union Bank for such down payment. This loan was obtained by plaintiff Green, primarily on his credit, and the note was signed by all of the partners. A sum in excess of $29,000 remained owing on the property, which was evidenced by notes secured by trust deeds.
 

 The obligation to Union Bank became due in July 1958 and there was an insufficient amount of liquid capital in the partnership account with which to pay it. The loan at this time was paid down to $8,700. Feiger arranged for a loan of $5,000 from a third party with which to pay off part of the Union Bank loan but the loan was never consummated because defendants Winchell and Gerard would not agree to its terms. Therefore, during the month of June 1958 Feiger, who handled the financial dealings of the partnership, wrote numerous letters, made phone calls, and called at least one meeting which all partners attended to discuss their joint liability on the bank loan. It appears that there is no dispute as to the amount owing or as to the partners’ liability to pay it. No funds were sent by defendants in response to Feiger’s informal requests.
 

 On or about July 1, 1958, plaintiff Feiger issued a call for additional capital from each of the partners pursuant to paragraph 7 of the partnership agreement. The amount demanded was $1,800 from each of the five partners which, together with the $700 in the partnership bank account, would have been sufficient to retire the $8,700 partnership debt to the bank. None of the defendants paid any part of the $1,800 call although it was stipulated at trial that each was financially able to do so if he so desired. Defendants’ attention was also called to clause 10, the alternate profit and loss provision. It appears that defendants wanted the funds to be raised by obtaining a new loan using the remaining $90,000 of partnership trust deeds as security or by selling some of them at a discount rather than by investing any of their own capital into the venture.
 

 Since defendants did not respond to the call plaintiffs Feiger and Green paid this partnership debt themselves, using personal funds, proceeds of a new personal loan, and the $700 in the partnership bank account. The amount advanced was recognized on the partnership books as a contribution to capital rather than as a loan. These contributions were later returned to Feiger and Green when partnership income be
 
 *127
 
 came available and were treated on the books as a return of capital. Plaintiffs stated that defendants knew that their (defendants’) interests had been reduced 20 per cent by reason of their failure to meet the first call and later were given a new opportunity to reinstate their original interests by contributing $1,800. This defendants refused to do.
 

 On September 11, 1958, additional moneys in the sum of $5,600 were due Bjorkland on the note for the purchase of his property. Feiger issued a second call for funds, $1,120 from each partner. This call recited that the profit participation shares of the defendants had been reduced on account of their failure to answer the first call. The defendants again refused to meet the call although it was stipulated that they had the capital to dp so. Plaintiffs Feiger and Green paid the $5,600 to Bjorkland and credited themselves with an additional capital contribution. Plaintiffs again brought clause 10 into play and reduced defendants’ share in the venture another 20 per cent, making a total reduction of 40 per cent.
 

 A third call for funds on the Bjorkland note was issued by Feiger on November 17, 1959. However, the issue of this call was abandoned by plaintiffs since defendants quitclaimed all their interest in the Bjorkland property to the plaintiffs for $1.00. The property was removed from the books as a partnership asset.
 

 Plaintiffs brought suit for declaratory judgment to reduce defendants’ share in the venture by 40 per cent. Defendants cross-complained for an accounting, dissolution of partnership and for a receivership. The trial court, sitting without a jury, gave judgment for plaintiffs, reducing the interests of defendants in the venture from 30 per cent to 19.2 per cent for Gerard, and from 15 per cent to 9.6 per cent each for Winchell and Bonanno. The court did not dissolve the partnership as requested by defendants but did remove Feiger as trustee of the trust deeds and had them held by a bank to pay the proceeds to the partners in the new ratios. Defendants appeal from the judgment.
 

 Defendants’ primary contention on appeal is that clause 10 of the partnership agreement, quoted above and entitled “Alternate Profit and Loss,” provides for a penalty and forfeiture and as such, should not be enforced. Defendants also contend that, as liquidated damages, the clause would be void under section 1670 Civil Code.
 

 Plaintiffs, on the other hand, have never, either at trial or on appeal, sought to classify clause 10 as a provision for liqui
 
 *128
 
 dated damages. They insist that it is merely a profit and loss determination clause which is dependent on the amount of capital contributed to the venture.
 

 The trial court found that clause 10 was not a penalty nor forfeiture specifically finding: “The partners contracted among themselves as to how profits or losses should be divided, giving to each of the partners a choice as to what interest they shall retain in the profits; further, the partners properly contracted among themselves for liquidated damages.” This finding appears to be couched in alternate terms, the first taking the provision out of section 1670, Civil Code (as not being liquidated damages), and the second stating that even if the clause provided for liquidated damages, it would be proper under section 1671, Civil Code,
 
 [1]
 
 which contains an exception to the prohibition against liquidated damages provided for in section 1670.
 

 The partners contracted for an “Alternate Profit and Loss” ratio in their partnership agreement. The words used in the partnership agreement do not refer to either liquidated damages or penalties, and although such words are not conclusive in the interpretation of this clause, they are entitled to some weight.
 
 (Caplan
 
 v.
 
 Schroeder,
 
 56 Cal.2d 515, 520 [15 Cal.Rptr. 145, 364 P.2d 321];
 
 Atkinson
 
 v.
 
 Pacific Fire Extinguisher Co.,
 
 40 Cal.2d 192 [253 P.2d 18].)
 

 ■ From our examination of the paragraph calling for “Alternate Profit and Loss” (paragraph 10) in context with the remainder of the contract we hold that the contract is not one providing for liquidated damages in violation of section 1670, Civil Code.
 

 The paragraph gives a partner the option of either meeting the call, or having his profit and loss percentage adjusted ; it does not call for the payment of any damages or compensation by the partner failing to meet the call.
 

 The trial court found that the “calls” of July 1 and September 11, 1958, were proper. Indeed, there is no contention made by defendants that the funds were not due to Union Bank and Mr. Bjorkland nor that such funds were not needed for the purpose of “liquidating mortgage indebtedness, liens, loans or other encumbrances ’ ’ as provided in clause 7 of
 
 *129
 
 the partnership agreement. It was stipulated at trial that defendants received the call letters which referred to the “Alternate Profit and Loss” provision of the partnership contract and the fact that it would go into effect if the additional capital requested of defendants was not forthcoming. It was also stipulated that defendants had the funds available with which to meet these calls for capital although this last factor may well have been immaterial in legal effect. These facts strongly support the conclusion of the trial court that “It probably was in view of the uncertain nature of things that the parties agreed that they would be given options or choices on whether they would make additional capital contributions. The transaction being very speculative, the defendant partners decided to settle among themselves what their respective rights would be.”
 

 Although a partnership generally connotes an equal sharing of profits and losses in the prosecution of a common purpose, the division may be left to agreement of the parties.
 
 (Constans
 
 v.
 
 Ross,
 
 106 Cal.App.2d 381, 389 [235 P.2d 113]
 
 ; Singleton
 
 v.
 
 Fuller,
 
 118 Cal.App.2d 733, 741 [259 P.2d 687].) It is this distribution of profits and losses based upon the amount of additional capital invested into the enterprise which they agreed upon here.
 

 In
 
 Balian
 
 v.
 
 Rainey,
 
 115 Cal.App.2d 10 [251 P.2d 731], a partnership contract was involved which the court found provided for $50 per week to be deducted from a partner’s capital contribution if the partner took an extended absence from the business. A partner was absent from the partnership for a period of 91 weeks and the remaining partners credited themselves with $4,550 from his capital account. The court foúnd no forfeiture and refused to allow him “to enjoy the benefits of the agreement but nevertheless seek[s] to avoid its burdens. Such a result could not have been contemplated by the parties.” (P. 16.)
 

 In
 
 Folden
 
 v.
 
 Lohrovich,
 
 171 Cal.App.2d 627 [841 P.2d 368], the plaintiff sought to recover a $2,400 deposit made on a store, the contract providing that the $2,400 would be retained by the lessor as liquidated damages if the lessee could not lease needed additional property. The trial proceeded on a liquidated damages penalty theory but on appeal the lessor contended (p. 629) “that the provision for defendant’s retention of the $2,400 constitutes neither a penalty nor liquidated damages, but rather that it is to be viewed as consideration for a right granted to plaintiffs [lessees] to be relieved of
 
 *130
 
 their obligations under the contract should they not obtain leases on the other properties. We are of the opinion that this latter theory is the correct one.” (See also
 
 Farthing
 
 v.
 
 San Mateo Clinic,
 
 143 Cal.App.2d 385, 393-394 [299 P.2d 977].)
 

 The contract in the instant ease is also of this type. Defendants did not breach the contract which would result in a penalty or liquidated damages. They elected to let the calls pass, without objection, which automatically brought into play the alternative profit and loss section.
 

 In our opinion the partnership contract in the instant case merely provides for an adjustment of the partners’ share of profits and losses under certain circumstances. The partners could agree upon the result to follow from failure to make further contributions of capital and this does not constitute a penalty or forfeiture. The contract does not in any legal sense call for liquidated damages and it is not void under section 1670, Civil Code.
 

 Even if we assume for purposes of discussion that paragraph 10 should be interpreted as a provision for liquidated damages, then the trial court also found for plaintiffs on this point: ‘ ‘ The agreement dealt with the partnership in a transaction that was very highly speculative and it was almost impossible at the time of entering into the partnership to foresee with any degree of accuracy the amount of profits or losses there might be. At the time of entering into the partnership agreement it was impractical and extremely difficult to fix the actual damages that might result in case of a breach. This represented a matter in which it is proper to contract among the parties for liquidated damages.” This finding follows the language of section 1671, Civil Code, which allows a provision for liquidated damages ‘‘when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damages. ’ ’ This is usually a question of fact to be resolved by the trier of fact.
 
 (McCarthy
 
 v.
 
 Tally,
 
 46 Cal.2d 577, 583 [297 P.2d 981];
 
 Better Food Mkts.
 
 v.
 
 American Dist. Tel. Co.,
 
 40 Cal.2d 179, 184-185 [253 P.2d 10, 42 A.L.R.2d 580];
 
 Rice
 
 v.
 
 Schmid,
 
 18 Cal.2d 382, 385 [115 P.2d 498, 138 A.L.R. 589].)
 

 In the instant case the partnership was involved in the purchase and sale of undeveloped desert realty. It was a new partnership which was severely undercapitalized. Only one of the five partners actually put in any capital at the beginning of the enterprise. The partnership was committed to a bank
 
 *131
 
 loan and on other notes. It could not have been known at the time of making the partnership agreement when further contributions of capital would be required or in what amount.
 

 The rule is well established that the validity of a liquidated damage provision is to be determined as a matter of law in the light of the facts known and unknown at the time the agreement was made.
 
 (McCarthy
 
 v.
 
 Tally,
 
 46 Cal.2d 577, 586, 587 [297 P.2d 981];
 
 Chastain
 
 v.
 
 Belmont,
 
 43 Cal.2d 45, 58 [271 P.2d 498];
 
 Better Food Mkts.
 
 v.
 
 American Dist. Tel. Co., supra,
 
 40 Cal.2d 179, 185; 42 A.L.R.2d 580.)
 

 It is clear that at the time this agreement was drafted and modified and approved by defendants’ counsel the venture was not yet started and there was no certainty of the large profits which might be forthcoming from the sale of the 480 acres of desert property. If the partners had wanted to continue to share in the profits which eventually came, they had ample opportunity to do so by meeting the calls made for the Bjorkland property. Defendants were fully aware of the effect that bringing into play the “Alternate Profit and Loss” clause would have on their interests. There was no penalty involved when they refused to contribute their share of additional capital thus requiring plaintiffs to contribute funds of their own to save the partnership assets.
 

 The cases of
 
 Caplan
 
 v.
 
 Schroeder, supra,
 
 56 Cal.2d 515, and
 
 Hill
 
 v.
 
 Hearron,
 
 113 Cal.App.2d 763 [249 P.2d 54], relied upon by defendants, do not provide a basis for holding that the trial court erred in finding that liquidated damages were proper in the instant case. In the
 
 Hill
 
 case,
 
 supra,
 
 the forfeiture of a partnership interest was absolute and the trial court did not find that damages would have been impracticable or extremely difficult to ascertain. There was no provision as to what the share of profits would be, based on the amount of capital contributed to the partnership. The facts of the instant case, the agreement itself and the circumstances surrounding the agreement bring about an entirely different result.
 

 In the
 
 Caplan
 
 ease,
 
 supra,
 
 56 Cal.2d 515, the Supreme Court followed the general restitutionary principles established in
 
 Freedman
 
 v.
 
 Rector, Wardens, etc. of St. Matthias Parish,
 
 37 Cal.2d 16 [230 P.2d 629, 31 A.L.R.2d 1], allowing a defaulting vendee to recover a down payment where the vendor failed to present to the trial court and establish that the clause providing for such retention was a valid liquidated damages clause coming within section 1671, Civil Code, Plaintiffs in
 
 *132
 
 the instant case are not in any way concerned with the retention of a down payment or any payments by defendants as liquidated damages. Plaintiffs are only concerned with having the partners’ profit and loss ratios reflect the amount of capital put into the venture pursuant to the terms of their agreement.
 

 Defendants also complain of the manner in which the $8,000 and $5,600 advanced by the plaintiff partners pursuant to the calls for additional capital on July 1, 1958, and September 11, 1958, were reflected on the partnership books. They contend that they were merely loans to the partnership and not capital contributions as reflected.
 

 It does not appear how this distinction in accounting terminology would work to defendant partners’ advantage. No matter how classified, plaintiffs Feiger and Green would have been entitled to have this amount returned, with interest if a loan, and as a return of capital if a capital contribution. The thrust óf defendants’ argument would appear to be that if the ■amounts were loans rather than capital contributions, plaintiffs also defaulted in providing additional capital available to the partnership which would leave all interests in the profits and losses
 
 in statu quo.
 
 There is no merit to this argument.
 

 , The trial court found that “the calls made on July 1, 1958, and September 11, 1958, represented calls for additional capital required by the partnership. ’ ’ It is clear that the funds advanced by plaintiffs were capital contributions made in response to the calls which they themselves initiated. The actual difference between loans and capital contributions in the instant case is strictly form and not substance. The money provided retired existing partnership obligations. It was to be returned as soon as additional income was received on notes which the partnership held. The defendant partners signed nothing to obligate themselves personally to the plaintiff partners. They cannot now complain as to the methods used by plaintiff partners in meeting all of the partners’ joint and several liabilities.
 

 The judgment is affirmed.
 

 Burke, P. J., and Jefferson, J., concurred.
 

 Appellants’ petition for a hearing by the Supreme Court was denied August 22,
 
 1962.
 

 [1]
 

 ,“§ 1671.
 
 Liquidated damages; circumstances authorizing
 
 "Exception. The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the ease, it would be impracticable or extremely difficult to fix the actual damage."